638 F.2d 599
 Shirley STATEN, Individually and on behalf of all other
persons similarly situated, Appellant,
v.
HOUSING AUTHORITY OF THE CITY OF PITTSBURGH, a public
corporation, Daniel A. Pietragallo, Individually and as
Executive Director of the Housing Authority of the City of
Pittsburgh and William Colbert, Paul Brophy, Carrie
Washington, William Coyne, Fred Gualtieri, Ruth Pittrell and
James Reich, Individually and as Members of the Board of
Directors of the Housing Authority of the City of Pittsburgh
and their agents and successors in office, Appellees.
 No. 80-1039.
 United States Court of Appeals,
Third Circuit.
 Submitted under Third Circuit Rule 12(6) Sept. 16, 1980.
Decided Nov. 25, 1980.
 
 Thomas J. Henderson, Timothy P. O'Brien, Thomas C. Reed, Neighborhood Legal Services Ass'n, Pittsburgh, Pa., for appellant.
 David B. Washington, Gen. Counsel, Housing Authority of the City of Pittsburgh, Pittsburgh, Pa., for appellees.
 Before ADAMS, HUNTER and HIGGINBOTHAM, Circuit Judges.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge.
 
 
 1
 1. In this appeal, plaintiffs ask this court to reverse the trial court's denial of their motion for attorneys' fees. Plaintiffs sought attorneys' fees under the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988 (1976), as prevailing parties in an action under the 1871 Civil Rights Act, 42 U.S.C. § 1983 (1976). The district court denied their motion, finding that the defendant housing authority was an agent of the federal government, immune under 28 U.S.C. § 2412 (1976), from the operation of section 1988. Additionally, the district court found that if it had erred as to the Housing Authority's status, it would nonetheless decline to exercise its discretion in favor of an award of fees for the plaintiffs. We disagree with both findings by the district court. The defendant is not immune under section 2412 from an award of attorneys' fees. Therefore, the district court should have awarded attorneys' fees against defendant unless it found "special circumstances" making the award of attorneys' fees in this case unjust.[1] Since the district court did not make such a finding, we vacate the lower court's judgment and remand with instructions that it exercise its discretion in accordance with the standard set forth in this opinion.
 
 I. FACTS:
 
 2
 2. In November, 1978, appellants filed an action in the Western District of Pennsylvania alleging that the defendant Housing Authority terminated their leases and instituted state eviction proceedings without providing sufficient notice as mandated by 42 U.S.C. § 1437d (Supp. II, 1978), the regulations promulgated thereunder at 24 C.F.R. 866 (1978), and the policy set forth in the Public Housing Occupancy Handbook, 7465.1 Rev. Plaintiffs further alleged that the Housing Authority's practices violated their fourteenth amendment due process rights. The district court issued a preliminary injunction in favor of plaintiffs on December 15, 1978, enjoining the eviction action and setting the matter for hearing. After a hearing, the district court entered an order in favor of plaintiffs holding that the Housing Authority's policies violated federal regulations and state law. The defendants were enjoined from bringing eviction actions until they complied with federal regulations. The court also directed the Housing Authority to institute a system of notices in compliance with the applicable regulations. Staten v. Housing Authority of the City of Pittsburgh, 469 F.Supp. 1013 (W.D.Pa.1979). Appellees have not challenged this decision.
 
 
 3
 3. On August 22, 1979, plaintiffs' counsel filed a motion for costs and attorneys' fees pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 1988. Opposing the motion, the Authority contended and the district court concluded that the Housing Authority was an "agent" of the United States and thereby entitled to immunity from the Civil Rights Attorneys' Fees Award Act of 1976, by reason of 28 U.S.C. § 2412. The district court denied appellant's motion for fees.
 
 
 4
 4. The Housing Authority of the City of Pittsburgh, is a public corporation created under the Pennsylvania Housing Authorities Law, 1937, May 28, P.L. 955 §§ 1-24, 35 Pa.Cons.Stat.Ann. §§ 1541-64 (Purdon 1980), and in accordance with the United States Housing Act of 1937, 84 Stat. 1779, 42 U.S.C. §§ 1437-40 (Supp. II, 1978) with the powers, among others, to sue and be sued, and to build or acquire housing projects and lease the dwellings therein. The Housing Authority receives funding for its projects from several sources. Under 35 Pa.Cons.Stat.Ann. §§ 1557-58 (Purdon 1977) the Housing Authority has the power to issue bonds to raise revenue for its projects. In addition, the Housing Authority has extensive financial ties with the federal government, receiving annual grants if it complies with federal regulations. 42 U.S.C. § 1440(c), (d), (e) (1976); 35 Pa.Cons.Stat.Ann. § 1562 (Purdon 1977). The state government serves as yet another source of income for Housing Authority projects. 35 Pa.Cons.Ann. § 1562.1 (Purdon 1977).
 
 
 5
 5. The daily operation and implementation of Housing Authority policies is supervised by defendant, Daniel A. Pietragallo, Executive Director of the Housing Authority. A city-appointed Board of Directors is responsible for the formulation of Authority policy. 35 Pa.Cons.Stat.Ann. § 1545 (Purdon 1977). In formulating those policies, the Board is guided, in part, by federally established standards. 42 U.S.C. § 1437d(c); Public Housing Occupancy Handbook §§ 4-16 (1978).
 
 
 6
 6. Appellee asserts that the economic and legal relationship between the defendant Housing Authority and the federal government makes an award of attorneys' fees against the Housing Authority tantamount to an award of fees against an "agency" of the United States. We disagree.
 
 II. DISCUSSION:
 A. Section 2412
 
 7
 7. Appellant sought attorneys' fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (1976) (hereinafter "Fees Act").[2] Intended as an incentive for the private enforcement of civil rights,[3] section 1988 serves as a general avenue for the award of attorneys' fees following a section 1983 action. Maher v. Gagne, 448 U.S. ----, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); Maine v. Thiboutot, --- U.S. ----, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); Ross v. Horn, 598 F.2d 1312 (3d Cir. 1979), cert. denied, --- U.S. ----, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980); Skehan v. Bd. of Trustees, 590 F.2d 470 (3d Cir. 1978), cert. denied, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979).
 
 
 8
 8. The road to collecting attorneys' fees under section 1988 is not, however, clear of obstacles. This court has held that the Fees Act is not a waiver of the sovereign immunity of the United States and, therefore, does not permit an award of counsel fees against the United States. Shannon v. United States Department of Housing and Urban Development, 577 F.2d 854, 855-56 (3d Cir. 1978), cert. denied, 439 U.S. 1002, 99 S.Ct. 611, 58 L.Ed.2d 677 (1978). Fee awards against the United States are generally prohibited by the express assertion of sovereign immunity found in 28 U.S.C. § 2412 (Supp. II, 1978):
 
 
 9
 Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title but not including the fees and expenses of attorneys may be awarded to the prevailing party in any civil action brought by or against the United States or, any agency or official of the United States acting in his official capacity, in any court having jurisdiction of such action....
 
 
 10
 Since there is no other statute specifically providing for attorneys' fees in the present situation, this court must determine whether the defendant Housing Authority is an "agency" or "official"[4] of the United States shielded by section 2412 from an award of attorneys' fees under section 1988.[5]
 
 
 11
 9. The district court suggested that the Housing Authority is an "agent" of the United States because the Pennsylvania legislature explicitly created the Authority "(t)o cooperate with and act as agent of the Federal Government for the public purposes set out in this act in connection with the acquisition, construction, operation or management of any housing project or part thereof." 35 Pa.Cons.Stat.Ann. § 1550(g) (emphasis added).
 
 
 12
 10. The district court correctly notes, however, that other parts of the Pennsylvania Act portrays the Housing Authority as a creature of state statute, with a state identity for many purposes. See, e. g., 35 Pa.Cons.Stat.Ann. § 1550 (Purdon 1980) (prologue) ("An Authority shall constitute a public body, corporate and politic, exercising public powers of the Commonwealth as an agency thereof." (emphasis added)). The Pennsylvania legislature's intentions with regard to the Authority's status as a federal "agency" for all purposes is then, at best, unclear.
 
 
 13
 11. The question of whether the housing authority is an "agency" or "official" of the United States, immune under section 2412, is a question of federal law and not a decision for the states.[6] See Chase Manhattan Bank, N.A. v. Finance Administration City of New York, 440 U.S. 447, 99 S.Ct. 1201, 59 L.Ed.2d 445 (1979) (per curiam) (the classification of a tax for purposes of a federal law is not controlled by the state's treatment of that tax). See also United States v. Bedford, 519 F.2d 650, 654 n.3 (3d Cir. 1975), cert. denied, 424 U.S. 917, 96 S.Ct. 1120, 47 L.Ed.2d 323 (1976) ("It is a recognized principle that a federal court is not bound by a state ... interpretation of federal laws....").
 
 
 14
 12. The Pittsburgh Housing Authority is a creature of state law which, by federal law, has a unique relationship with the federal government. While a great deal of funding for the Housing Authority comes from the federal government, that funding alone does not establish an agency relationship between the Housing Authority and the federal government.[7] Rather, if the State agency qualifies for Federal assistance (42 U.S.C. § 1440(b)(1)), the federal government becomes a guarantor of the Authority's obligations. The federal funds merely guarantee Housing Authority projects; they are not segregated funds exposed to attorneys' fees action.[8]
 
 
 15
 13. Our courts have recognized since 1935[9] that the decentralized public housing program works through a dual network of federal and state agencies,[10] not through the federal government's sole and direct control over the housing projects.[11] Against this background, the district court erred in finding that a local agency that receives some federal funding is necessarily an "agency" of the United States immune under section 2412. Funding is certainly one indication of whether an Authority is an extension of the United States; it is not, however, determinative. We must also consider the Agency's exclusive control over the federal grant funds, its freedom from federal involvement or control over the daily management and operation of the Authority, and the fact that the Housing Authority was created by and continues to be governed in accordance with state law. Cf. United States v. Orleans, 425 U.S. 807, 816-18, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976) (The mere existence of federal funding or federal regulations influencing a local agency's policies and programs does not designate the local agency as an agent of the United States liable for damages under the Federal Tort Claims Act). Given both the federal and state statutory schemes for Housing Authorities, we find that defendant, Housing Authority is not an "agency" of the United States immune under section 2412.
 
 B. "Special Circumstances" Standard
 
 16
 14. Upon remand, it will be within the district court's discretion to decide whether appellant is entitled to attorneys' fees under section 1988. It must, however, exercise this discretion in accordance with the proper standard for granting such fees.
 
 
 17
 A party seeking to enforce the rights protected by the statutes covered by (§ 1988), if successful, should ordinarily recover attorneys' fees unless special circumstances would render such an award unjust.
 
 
 18
 Skehan v. Bd. of Trustees, 590 F.2d 470, 496 (3d Cir. 1978), cert. denied, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979), citing S.Rep.No.94-1011, 94th Cong., 2d Sess. 4, reprinted in (1976) U.S.Code Cong. & Admin.News, pp. 5908, 5912 (emphasis added). See also Ross v. Horn, 598 F.2d 1312 (3d Cir. 1979), cert. denied, --- U.S. ----, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (June 24, 1980); Sethy v. Alameda County Water District, 602 F.2d 894 (9th Cir. 1979), cert. denied, 444 U.S. 1046, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980); Dawson v. Pastrick, 600 F.2d 70 (7th Cir. 1979); Bonner v. Long, 599 F.2d 1316 (4th Cir. 1979); Mid-Hudson Legal Services, Inc. v. G & U, Inc., 578 F.2d 34 (2nd Cir. 1978); Brown v. Culpepper, 559 F.2d 274 (5th Cir. 1977).
 
 
 19
 15. The district court failed to apply the proper standard in appellant's case.[12] The district court stated that it would decline to award attorneys' fees because the case was "simple" and should be "handled routinely." Simplicity, by itself, however, is not a "special circumstance" justifying a denial of attorneys' fees in a section 1983 case.[13] Rather, it is but one of the factors to be considered in determining the amount of the fees award. See Hughes v. Repko, 578 F.2d 483, 487 (3d Cir. 1978); Swicker v. William Armstrong & Sons, Inc., 484 F.Supp. 762, 767 (E.D.Pa.1980). Whether the appellant is entitled to a fees award should be determined by whether her case acted as a "catalyst" for the vindication of her constitutional rights. Ross, 598 F.2d at 1322. If appellant's claims were "substantial" or not "frivolous" (Gagne v. Maher, 594 F.2d 336 (2d Cir. 1979); Nadeau v. Helgemoe, 581 F.2d 275 (1st Cir. 1978)), they may serve as a basis for attorneys' fees under section 1988. See also Sharrock v. Harris, 489 F.Supp. 913 (S.D.N.Y.1980).
 
 
 20
 16. We remand this case to the district court so that it may decide whether there are any "special circumstances" making the award in this case unjust. If the district court does not find any such circumstances, it should award attorneys' fees in accordance with the standard set forth in Hughes v. Repko, 578 F.2d 483 (3d Cir. 1978). See also Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).
 
 
 21
 17. Accordingly, the district court's judgment is vacated and the case remanded for further proceedings in accordance with this court's judgment.
 
 
 
 [1]
 Ross v. Horn, 598 F.2d 1312 (3d Cir. 1979), cert. denied, --- U.S. ----, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980); Skehan v. Bd. of Trustees, 590 F.2d 470, 496 (3d Cir. 1978), cert. denied, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979). See generally note 12 & accompanying text infra
 
 
 [2]
 Section 1988, in relevant part, provides:
 In any action or proceeding to enforce a provision of sections 1977, 1978, 1979, 1980 and 1981 of the Revised Statutes (42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986), Title IX of Public Law 92-318, ... the court, in its discretion, may allow the prevailing party, other than the United States, reasonable attorney's fee as part of the costs.
 
 
 [3]
 See generally Malson, In Response to Alyeska The Civil Rights Attorney's Fees Awards Act of 1976, 21 St. Louis U.L.J. 430 (1976); Comment, Attorney's Fees in Damage Actions Under the Civil Rights Attorney's Fees Awards Act of 1976, 47 U.Chi.L.Rev. 332 (1980)
 Just prior to the passage of the bill, Senator Kennedy cited civil rights violations by housing authorities as examples of conduct which the Act would help to redress. 122 Cong.Rec.S. 17,052 (1976).
 
 
 [4]
 The Act does not define these terms. See 28 U.S.C. § 2412 (1976)
 
 
 [5]
 Few courts have addressed this precise issue. Recently, in Wright v. Buffalo Mun. Hous. Auth., No. 77-88 (W.D.N.Y. October 25, 1978), the court decided that the municipal housing authority involved was not a federal agency and thus not protected by § 2412. In Hammond v. Housing Auth. and Urban Renewal Agency of Lane County, 328 F.Supp. 586 (D.Ore., 1971), the court permitted an award of attorneys' fees against a municipal housing authority without addressing the issue of whether § 2412 barred such a recovery. In an opinion from the District of Hawaii, the court chose not to award attorneys' fees. The parties had stipulated to costs but the court cited, without explanation, to § 2412 when it held that attorneys' fees were not to be included in the judgment costs. Marion Meade v. Hawaii Housing Authority, No. 74-46 (Hawaii Nov., 1975)
 Appellees cite cases that, at first impression, appear similar to the instant case. For example, in National Ass'n of Regional Medical Programs, Inc. v. Mathews, 551 F.2d 340 (D.C.Cir.1976), cert. denied, 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977), the court held that an award of attorneys' fees against the defendants would be equivalent to an award against the United States. See also Shannon v. United States Dept. of Hous. & Urban Dev., 577 F.2d 854 (3d Cir. 1978), cert. denied, 439 U.S. 1002, 99 S.Ct. 611, 58 L.Ed.2d 677 (1978); Sierra Club v. Lynn, 502 F.2d 43 (5th Cir. 1974), cert. denied, 421 U.S. 994, 95 S.Ct. 2001, 44 L.Ed.2d 484 (1975).
 These cases are distinguishable. The fees in the above cases were to be paid either by a federal co-defendant or from federal funds distributed to the local Authority for the specific challenged practice. There is no federal co-defendant in the present case nor has it been shown that specific federal funds will be responsible for paying a fee award. As such, the present case is more closely analogous to Sharrock v. Harris, 489 F.Supp. 913 (S.D.N.Y.1980), in which the court allowed the judgment for attorneys' fees once the federal co-defendant had been dropped from the case. Id. at 914 n.1.
 
 
 [6]
 There would be an inherent danger in allowing the states to define who is "agency" or "official" of the United States. If so permitted, the state could undermine the role of § 1988 by designating state officials and agencies as "agents" of the United States, immune under § 2412 from attorneys' fees
 
 
 [7]
 In United States v. Orleans, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1975), the Supreme Court considered an analogous issue whether federal funding brought a local state agency under the Federal Tort Claim Act's waiver of sovereign immunity. The Court stated:
 Federal funding reaches myriad areas of activity of local and state governments and activities in the private sector as well. It is inconceivable that Congress intended to have waiver of sovereign immunity follow congressional largesse and cover countless unidentifiable classes of "beneficiaries." The Federal Government in no sense controls "the detailed physical performance" of all the programs and projects it finances by gifts, grants, contracts or loans." Logue v. United States, 412 U.S. 521 at 528, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121.
 Id. at 816, 96 S.Ct. at 1976 (citations omitted). In the case before us we follow this reasoning to deny rather than to grant immunity. As in Orleans,
 Nothing could be plainer than the congressional intent that the local entities here in question have complete control over operations of their own programs with the Federal Government supplying financial aid, advice, and oversight only to assure that federal funds not be diverted to unauthorized purposes.
 Id. at 818, 96 S.Ct. at 1977. Accordingly, we decline to find that Congress intended to clothe this local agency, a recipient of federal funding, in the cloak of § 2412 immunity.
 
 
 [8]
 Since there is no indication in the record that federal funds would be the source of a fee award, we reject the district court's argument that "an award of attorneys' fees in this case would create a situation where money from one federally funded entity would be going to another federally funded entity." District Court Opinion, p.4. This case is therefore indistinguishable, on this basis, from Rodriguez v. Taylor, 569 F.2d 1231 (3d Cir. 1977) in which this Court permitted a federally funded legal services organization to recover attorneys' fees from the City of Philadelphia
 
 
 [9]
 In 1935, a federal district court decided United States v. Certain Lands, 9 F.Supp. 137, (W.D.Ky.), aff'd, 78 F.2d 684 (6th Cir. 1935), appeal dismissed, 297 U.S. 726, 56 S.Ct. 594, 80 L.Ed. 1009 (1936) which held that the federal government had no power under the Constitution to clear land and build public housing. In his Article, Public Housing and the Poor: An Overview, 54 Cal.L.Rev. 642 (1966), Professor Friedman notes that this case marked the beginning of an era in which Washington used a decentralized program ("supply money and a certain amount of benign control") to institute housing reforms. Id. at 647
 
 
 [10]
 Congress created a federal agency, the Department of Housing and Urban Development ("HUD") to deal, on a federal level, with housing problems. Regional and area offices of HUD, located within a state, help implement federal policies. The federal agencies work in a parallel yet independent network from state housing and finance agencies. The only connection between the two networks of housing agencies is one of assistance; federal technical assistance or funding is granted upon state compliance with HUD regulations. See generally 42 U.S.C. § 1440 (1976). Pennsylvania, in creating its Housing Authorities, acknowledged the joint role of the state and federal agencies, granting to the state housing authorities the powers "to enter into agreements, including agreements with the United States." 35 Pa.Cons.Stat. § 1541 (1937), May 28, P.L. 955, as amended 1949 May 20, P.L. 1614, § 1. If the state housing authorities do not comply with the federal regulations they are denied the funding but not the authority to engage in the housing projects. 35 Pa.Cons.Stat.Ann. §§ 1557, 1562 (Purdon 1977). Thus, although the state and federal agencies work hand in hand in solving many of today's housing problems, they do so by formal contract and not as members of a single federal agency
 
 
 [11]
 Recently, Congress praised the distinct role state agencies play in implementing housing reforms:
 In adopting this new authority, the Committee has been cognizant of the increasingly important and effective role that State housing finance agencies have come to play in the field of government-assisted housing, and of the growing number of States that within the past few years have assumed this kind of responsibility for dealing with housing needs within their States. There are now about 30 State housing agencies, most of them created within the past few years. The Committee welcomes and encourages this approach, which combines the use of State resources, through State financing of housing and other measures such as tax abatement, with Federal housing assistance for low and moderate-income housing.
 S.Rep.No.93-693, 93rd Cong., 2nd Sess. 37-38 (1974), reprinted in (1974) U.S.Code Cong. & Ad.News, pp. 4273, 4309. The Senate Report is careful to distinguish the Department of Housing and Urban Development ("HUD") and its local agencies from the "state housing finance agencies." Id.
 
 
 [12]
 While the general American Rule is that a prevailing party must pay its own attorneys' fees, Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 1141 (1975), Congress' enactment of § 1988 directs the federal courts to approach civil rights cases from a reverse posture. "(A)wards should be automatic except in the most extraordinary circumstances." 122 Cong.Rec.H. 12,165 (daily ed. Oct. 1, 1976) (remarks of Rep. Seiberling, original congressional sponsor of Fees Act legislation). As stated in the Senate Report, "If our civil rights laws are not to become mere hollow pronouncements which the average citizen cannot enforce, we must maintain the traditionally effective remedy of fee shifting in these cases." S.Rep.No.94-1011, supra, at 6, reprinted in (1976) U.S.Code Cong. & Admin.News, pp. 5908, 5913. The "special circumstances" standard is the mechanism by which to achieve Congress' objective
 
 
 [13]
 There are cases, however, that hold that a defendant can meet its burden of showing special circumstances by showing that the circumstances of the constitutional violation were beyond its control or that the plaintiffs were attacking antiquated statutes. See, e. g., Chastang v. Flynn & Emrich Co., 541 F.2d 1040, 1045 (4th Cir. 1976); Naprstek v. City of Norwich, 433 F.Supp. 1369 (N.D.N.Y.1977). Appellees suggest in their brief that such "special circumstances" apply in the instant case. We will defer to the district court to make specific findings articulating why, if at all, appellant's successful suit did not act as a "catalyst" for the change in the Authority's policies