JOSEPH L., Jr. and Mary Tunstall; and Joseph Massey, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

OFFICE OF JUDICIAL SUPPORT OF the COURT OF COMMON PLEAS OF DELAWARE COUNTY, Grace Building Company, Inc., and Curtis Building Co., Inc., on behalf of themselves and all others similarly situated, Defendants.

Civ. A. No. 75–3103.

United States District Court,
E. D. Pennsylvania.

July 6, 1981.

David A. Scholl, Bethlehem, Pa., C. Norwood Wherry, Media, Pa., for plaintiffs.

Alfred O. Breinig, Jr., Jenkintown, Pa., Michael Ehling, Media, Pa., for defendants.

## OPINION

DITTER, District Judge.

This action challenges the constitutionality of certain tax sales conducted pursuant to the Pennsylvania County Return Act (Act), 72 P.S. §§ 5971a *et seq.* Suit was brought under 42 U.S.C. § 1983 and the Fourteenth Amendment. Earlier, I dismissed plaintiffs' complaint believing the facts of this case fell within the abstention doctrine, *Johnson v. Kelly*, 436 F.Supp. 155 (E.D.Pa.1977), and therefore did not reach the merits of plaintiffs' claims or the issue of class certification. The Court of Appeals reversed and remanded. 583 F.2d 1242 (3d Cir. 1978). Presently before me are plaintiffs' motion for class certification and the motion of defendant, Curtis Building Co., Inc., to dismiss or, in the alternative, for summary judgment as to two of the named plaintiffs, Mary E. Tunstall and Joseph L. Tunstall, Jr. Since the facts as to the tax sale of each plaintiffs' property are set forth in great detail in my earlier opinion and in the opinion of the Court of Appeals, I shall recite only those necessary for the disposition of these motions.

I. Motion to Dismiss or for Summary Judgment

Shortly after the Court of Appeals remanded, Curtis filed what it styled a motion to confirm dismissal and/or motion to dismiss as to the Tunstalls. Curtis alleged that because the Tunstalls failed to join the other plaintiffs in appealing from my order of dismissal, the Tunstalls were precluded from pursuing this action on remand. Before I ruled on that request, plaintiffs amended their complaint. Subsequently, Curtis filed another motion; this one to dismiss or, in the alternative, for summary

judgment, again as to the Tunstalls. The new motion raised the doctrine of res judicata as a bar to the Tunstalls in proceeding with this action. Additional facts are needed to put this motion into its proper prospective.

Plaintiffs filed their complaint challenging the constitutionality of the Act on October 31, 1975. Along with their complaint, the Tunstalls sought a temporary restraining order to enjoin the continuance of a state court quiet title action, brought against them by Curtis which had bought their property at a tax sale conducted pursuant to the Act. On that same date, I denied the restraining order. Subsequently, the Tunstalls amended their answer to the quiet title action and raised, for the first time in that action, the question of the constitutionality of the Act. The quiet title action was concluded on March 14, 1979, with the entry of judgment against the Tunstalls and on behalf of Curtis. The judgment was based on the opinion of the Commonwealth Court, reported at 387 A.2d 1370 (Pa.Cmwlth.1978). The Tunstalls' petition and supplemental petition for appeal to the Supreme Court of Pennsylvania was denied in late 1978. No attempt to seek review in the Supreme Court of the United States was made.

Basically, Curtis' argument is that having fully and freely raised and litigated the constitutional issues in state court, the Tunstalls are barred under the doctrine of res judicata from reasserting these same claims in this subsequent federal action. The Tunstalls counter that res judicata has limited application in actions, as this one, that are maintained under 42 U.S.C. § 1983. Both parties rely on *New Jersey Education Association v. Burke*, 579 F.2d 764 (3d Cir.), *cert. denied*, 439 U.S. 894, 99 S.Ct. 252, 58 L.Ed.2d 239 (1978), as support for their respective positions. Therefore, an examination of the *Burke* decision is in order.

In *Burke*, plaintiffs brought a class action in state court challenging certain regulations concerning the qualifications of teachers in bilingual/bicultural education pro-

grams. Before a final decision by the state courts had been reached, the class filed an action in federal district court challenging the regulations under 42 U.S.C. § 1983. The district court dismissed the complaint on abstention grounds. Before oral argument could be held by the Third Circuit on plaintiffs' appeal from the district court's dismissal, the state court proceedings concluded with a finding that the challenged regulations were consistent with due process and equal protection. On appeal, the Court of Appeals was thus presented with the question whether res judicata should apply to bar the federal action. The Third Circuit, following the Second and Seventh Circuits, held that "a state court judgment forecloses a section 1983 litigant from raising grievances in federal court only if such claims have been pressed before, and decided by, a state tribunal." 579 F.2d at 774.[1]

The *Burke* court took great pains to distinguish the application of res judicata in section 1983 actions with the doctrine's application in other settings. In a suit brought under section 1983, res judicata will bar only those claims that were "actually decided by the state tribunals," not those that "could have" or "might have been raised before the state court" but were not. *Id.* Thus, in applying the *Burke* holding to the facts of this case, I must necessarily decide what issues were " 'freely and without reservation' litigated" by the Tunstalls in defending the state court quiet title action brought against them by Curtis. *Id.* at 775 (quoting *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 419, 84 S.Ct. 461, 467, 11 L.Ed.2d 440 (1964)). Only those claims that were *actually* litigated in state court should be dismissed. For the reasons which follow, I hold that Counts One, Two, Three, Four, part of Seven, and Count Eight of the amended complaint should be dismissed as to the Tunstalls on res judicata grounds.

As stated above, the Tunstalls filed their amended answer to the state court quiet

title action after I denied their motion for a temporary restraining order but before I dismissed, on abstention grounds, their federal complaint. The amended answer raised, for the first time in that action, their claims that the Act was unconstitutional. The First Count of the amended answer alleges that the notice provisions of the Act were constitutionally inadequate. Almost verbatim is Count One of the amended complaint. The Second Count of the amended answer challenges the lack of a procedure whereby a property owner can contest the validity of the determination that a tax deficiency exists. Count Two of the amended complaint is substantially the same. The Third Count, which complains of the Act's failure to provide for notice to the property owner of his right to redeem his property within two years of the sale, is nearly a carbon copy of Count Three. The Fourth Count and Count Four are also the same; both claim that the Act is unconstitutional because it fails to provide notice to the property owner of his right to receive any surplus that remains after satisfaction of the tax claims. Most of the Fifth Count is repeated in Count Seven, and these two counts allege that considered as a whole, the Act is unconstitutional. The principal difference between the Fifth Count and Count Seven is the addition of two further allegations in Count Seven that, the plaintiffs complain, contribute to the Act's unconstitutionality as a whole. These two further allegations are spelled out in detail in Counts Five and Six. Count Five alleges the practice of the County Treasurer in sending just one notice to joint property owners is unconstitutional, and Count Six complains of the County Treasurer's practice of crediting tax payments to the tax year in which payments were made rather than past years in which delinquencies existed without making any special effort to notify the owners. The claims advanced in Counts Five and Six of the amended complaint are nowhere mentioned in the Tunstall's amended answer in state court. Fi-

---

**1.** That *Burke* represents the current law of the Third Circuit has recently been noted in *Lehman v. Lycoming County Children's Services*

*Agency,* 648 F.2d 135 at 144 n.11a (3d Cir., 1981) (en banc).

nally, the Sixth Count, which is the last count of the Tunstalls' amended answer, repeats Count Eight of the amended complaint.

Having compared the amended answer with the amended complaint, I must dismiss, as to the Tunstalls only, Counts One, Two, Three, Four, Seven (except as it relates to the allegations raised in Counts Five and Six), and Count Eight of their amended complaint. I do so because the matters covered by these counts were litigated freely and without reservation in state court and are therefore barred by res judicata.

The Tunstalls argue that res judicata has no application whatsoever in this proceeding. They advance several reasons for this conclusion, none of which I find persuasive. They argue that "considerable doubt" exists whether the highest Pennsylvania court considered the constitutional issues in question since the Supreme Court of Pennsylvania "summarily" refused to allow a discretionary appeal. No citation of authority was given for this proposition. Moreover, *Burke* exacts no such requirement. In fact, in *Burke* itself, the highest state court refused to hear the matter and, as here, no attempt was made to seek review in the United States Supreme Court. Furthermore, in *Switlik v. Hardwicke Co., Inc.*, 651 F.2d 852, at 860 (3d Cir. 1981), the Third Circuit stated that merely because the trial court's judgment is affirmed without opinion is of "no consequence" in determining whether the doctrine of res judicata has application in a subsequent proceeding. Thus, in this context, all that is required for res judicata to apply is a final resolution by the state courts. There can be no dispute that it has occurred in the instant case.

The Tunstalls claim that res judicata should not apply because the Commonwealth Court's opinion did not deal explicitly with all of the constitutional issues raised in the amended complaint and that only scant treatment was given to those which were discussed. I agree, of course, as to those issues not raised in the amended answer. Those that were advanced, however, are barred by res judicata. Although it is true that the Commonwealth Court did not discuss every constitutional issue suggested in the amended answer, it is also clear that those issues were "submitted" to that court (and the other state tribunals) for consideration. That the Commonwealth Court chose not to discuss expressly all the constitutional issues raised is not decisive.

The Tunstalls argue that they were "compelled" to raise their federal claims in state court, thus precluding a finding that their constitutional claims were litigated freely and without reservation. This compulsion stems from the fact that on the date their restraining order was denied, I stated I should abstain from deciding this case. Thus, the Tunstalls claim they were forced to raise the constitutional questions in a defensive position in state court; otherwise they faced the prospect of never raising those issues in any court. I disagree.

The Tunstalls were never forced to raise *any* federal claims in state court. As a litigation tactic, the Tunstalls "could simply have withheld [their] federal constitutional claims in the state court proceedings, and then brought those claims in federal court under § 1983." *Lehman v. Lycoming County Children's Services, supra*, at 145. There is, however, no indication that the Tunstalls intended to "reserve" any of their federal constitutional issues as required by *Burke*. Waiting until the state court proceedings concluded before raising their constitutional claims in a subsequent federal proceeding brought under section 1983 would have avoided any abstention problems and not triggered the doctrine of res judicata to bar the constitutional allegations. Moreover, the Tunstalls were entirely free to appeal my dismissal of their complaint on abstention grounds to the Court of Appeals. They did not do so. As noted above, on the appeal of the other plaintiffs, the Third Circuit determined my abstention to be erroneous. The Tunstalls could have done what the other plaintiffs did. Thus, I reject the Tunstalls' assertion that they were compelled to raise their constitutional claims in the state court proceeding.

Next, the Tunstalls argue that since they were *defendants* in the state court quiet title action, there was little opportunity for their constitutional grievances to be litigated freely and without reservation. Rather, the constitutional issues were raised purely as a defensive measure and res judicata should therefore not apply. I do not agree. Simply because the Tunstalls were not voluntarily in state court but appeared there as defendants makes no difference at all. The key question is whether the Tunstalls raised their constitutional grievances voluntarily. The answer to this, of course, is in the affirmative because, as stated above, the Tunstalls were never compelled to raise any constitutional issues in the state court. *See also Brunwasser v. Strassburger*, 490 F.Supp. 959, 965 (W.D.Pa.1980).

■ Finally, the Tunstalls claim that I should not apply res judicata to bar their claims because a federal three-judge panel had earlier declared the Act unconstitutional. *Ponder v. Monteith*, No. 73–1991 (E.D.Pa. Oct. 18, 1974). They ask that I follow *Ponder*, which they claim is indistinguishable from the instant case, and hold that Curtis is collaterally estopped to relitigate its holding. I cannot do so. While the issues in *Ponder* may have been the same, the doctrine of collateral estoppel has no application because Curtis was not a party or in privity to a party in *Ponder* and, hence, did not have a full and fair opportunity to litigate the issues in question. *See Public Service Mutual Insurance Co. v. Cohen*, 616 F.2d 704, 704 (3d Cir. 1980), which sets forth the elements of collateral estoppel.

■ In sum, I conclude that the allegations advanced in Counts One, Two, Three, Four, Seven (except as discussed above),

and Eight, were actually litigated freely and without reservation by the Tunstalls in state court. These counts of the complaint must therefore be dismissed as to the Tunstalls.[2]

II. Motion for Class Certification

Plaintiffs have moved for certification of this case as a class action pursuant to Fed. R.Civ.P. 23. The named plaintiffs seek to represent a class of all individuals whose real property has been sold pursuant to the Act at a Delaware County tax sale against a class of defendants to consist of all purchasers, their heirs and assigns, of such properties. The named plaintiffs propose that they represent the plaintiff class and that the private defendants, Curtis and Grace, represent the defendant class. Both plaintiff and defendant classes would be limited to those properties for which no quiet title action had been concluded prior to the time this action was instituted. Plaintiffs claim that the proposed classes are appropriate under Rule 23(b)(1)(A) and (b)(2). The named defendants oppose designation of either a plaintiff or defendant class. For the reasons which follow, I conclude class certification should be denied as to both plaintiffs and defendants.

A. *The Proposed Plaintiff Class*

■ In order to certify a case as a class action, the party seeking certification bears the burden of showing that all of the prerequisites of Rule 23(a) and one of the conditions of 23(b) have been met.[3] In ruling on a motion for class certification, the "court has broad discretion in deciding whether to allow the maintenance of a class action and therefore also may take account of considerations not expressly dealt with in

**2.** Since I have based my dismissal of these counts on the doctrine of res judicata, I express no view on the grounds advanced in Curtis' motion to confirm dismissal and/or motion to dismiss, *i. e.*, whether the Tunstalls' complaint should be dismissed for failure to appeal my earlier dismissal of their complaint on abstention grounds. Even if I were to accept Curtis' argument in this regard, I would still allow the Tunstalls to proceed with this action on Counts

Five, Six, and Seven (insofar as it relates to the allegations raised in Counts Five and Six) of the amended complaint because these counts were not advanced in the original federal complaint filed on October 31, 1975.

**3.** Since I am denying certification of the putative plaintiff class on failure to meet any of the 23(b) conditions, I need not decide whether the prerequisites of 23(a) have been met.

the rule." 7A C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1785, at 134–35 (1972). In addition, my colleague, Judge Fullam, has noted that "the Rule provides for great flexibility ... and each case requires its own exercise of judgment." *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 43 F.R.D. 452, 458 (E.D.Pa.1968).

Rule 23(b)(1)(A) provides that a class action is appropriate if "the prosecution of separate actions by or against individual members of the class would create a risk of ... inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards for the party opposing the class." The rule is concerned essentially with "whether individual actions would have an adverse effect on the party opposing the class." 7A C. Wright & A. Miller, *supra*, § 1773, at 8. "The provision was designed to 'obviate the actual or virtual dilemma which would ... confront the party opposing the class' when incompatible adjudications would trap him in the inescapable legal quagmire of not being able to comply with one such judgment without violating the terms of another." *Walker v. City of Houston*, 341 F.Supp. 1124, 1131 (S.D.Tex. 1971) (quoting Advisory Committee Notes to Fed.R.Civ.P. 23).

Plaintiffs claim this subsection is satisfied because of the "possibility of obtaining different adjudications in different cases involving different tax sales conducted pursuant to the County Return Act." Plaintiffs' Memorandum of Law In Support of A ... Class Determination at 27 (Document No. 9). Certainly, it is true that different results may obtain if other suits concerning other properties are brought. Such variety would indeed be expected from the number of factual situations that could form the backdrop before which constitutional arguments may be raised to justify a specific

individual's failure to save his property from tax sale or for his later failure to redeem it. But the possibility that there may be different results in different factual situations—or even different results in the same factual situation—is not the test for Rule 23(b)(1)(A). Rather, the question is whether there is a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for a specific defendant.[4] While any defendant who purchased two or more properties at tax sale might, as a result of subsequent litigation, be required to surrender one and be permitted to keep the other, these will be property-by-property decisions. Either a defendant will retain his tax sale purchase or he will be divested of it, but no defendant will be faced with two different orders from two different courts requiring conveyance to two different former owners. See generally Judge VanArtsdalen's discussion in *Bogosian v. Gulf Oil Corp.*, 62 F.R.D. 124, 131–32 (E.D.Pa.1973). For this reason, certification under 23(b)(1)(A) is not appropriate.

As a second basis for certification of a plaintiff class, plaintiffs seek to maintain this action under 23(b)(2) which provides for a class action where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." This subsection of the rule is "limited to those class actions seeking predominantly injunctive or declaratory relief." 1 Newberg on Class Actions, § 1145, at 240 (1977). Plaintiffs claim that they have satisfied this subsection because their amended complaint states that the relief sought primarily is a declaration that all sales 'held pursuant to the Act were unconstitutional and seeks an injunction to set aside these tax sales. The complaint further avers that an injunction

---

**4.** Although named as a defendant, the Office of Judicial Support of the Court of Common Pleas of Delaware County (OJS) is really only a nominal defendant in this action. First, it performs merely a ministerial task in filing actions for quiet title. Second, it has stated that it does not oppose granting any relief to the individual plaintiffs and is only opposing class certification because of the deleterious effect that it claims class relief would have on the judicial administration in Delaware County.

should be issued against the private and public defendants preventing them from commencing, proceeding with, or filing actions to quiet title. Finally, the complaint seeks an order to the effect that if all the delinquent taxes are paid, respectively, by the named plaintiffs, the sales shall be set aside. On its face, the complaint does seem primarily to ask for injunctive and declaratory relief. However, looking beyond the four corners of the complaint, as I may properly do, *Doctor v. Seaboard Coast Line R.R. Co.*, 540 F.2d 699, 707 (4th Cir. 1976), it is apparent the relief sought is not predominantly injunctive or declaratory.

Plaintiffs filed this action on October 31, 1975. Effective January 1, 1976, however, tax sales in Delaware County were no longer governed by the Act here in question but were made pursuant to the Real Estate Tax Sale Law, 72 P.S. §§ 5860.101 *et seq.* Therefore, plaintiffs are not really asserting a facial challenge to the Act but are contesting its constitutionality as applied to the individual sales of their properties. The relief really sought is a chance for the named plaintiffs and the class they want to represent to reacquire their properties. As the Court of Appeals observed in its opinion vacating my earlier order of dismissal: "In effect, they [plaintiffs] merely are seeking an extension of the two-year redemption period, which is already a part of the statutory scheme, for those individuals whose property has been sold at tax sales that they allege were constitutionally deficient." *Johnson v. Kelly, supra,* 583 F.2d at 1251. Thus, since the relief that the representatives parties and their proposed class pursue is essentially to right past wrongs, this action is not appropriate for class certification under 23(b)(2).[5]

---

5. Insofar as the relief sought by the plaintiffs is retroactive, plaintiffs' proposed class would be more apt for certification under Rule 23(b)(3). While plaintiffs did not move for certification under this subsection, I note that to do so would be unavailing. Although the proposed class of plaintiffs share common questions of law or fact, these common questions do not *predominate,* as required by 23(b)(3), since there are an endless number of factual variants in every tax sale. Some of the more obvious include the nature of the estate of the assessed owner, the owner's address, and the nature of

## B. The Proposed Defendant Class

Plaintiffs also seek to maintain this action against a class of defendants, represented by the private defendants, Grace Building Company, Inc. and Curtis Building Company, Inc., consisting of "all purchasers, heirs, and assigns, of lands sold at Delaware County Treasurer's tax sales pursuant to 72 P.S. §§ 5971a ff., who had not consummated a quiet title action against the property owners at the time that this action was instituted." Both the private and the public defendants argue that certification of a defendant class should be denied because the private defendants are not adequate representatives of the class. I agree.

Rule 23(a)(4) provides that "[o]ne or more members of a class may sue or *be sued* as representative parties on behalf of all only if ... the representative parties will fairly and adequately protect the interests of the class." (emphasis added). From the language—"be sued"—it is clear that Rule 23 provides expressly for defendant as well as plaintiff class actions. *United States v. Trucking Employers, Inc.,* 75 F.R.D. 682, 686 (E.D.Pa.1977). Since "Rule 23 does not differentiate on its face between plaintiff and defendant class actions ... [i]t has been suggested that the test for a defendant class is similar to the test for a plaintiff class for adequacy of representation." 7 C. Wright & A. Miller, *supra,* § 1770, at 240 (1980 Pocket Part).

Adequacy of representation has been held to encompass consideration of two factors: "(a) the ... attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the [named

improvements. Moreover, in this case, a class action is not "superior to other available methods for the fair and efficient adjudication of the controversy." First, since there are so many variants in every tax sale case, the individual members of the class would have a greater interest in prosecuting separate actions than in pursuing a class action. Second, a class action in this context would be unmanageable since for every plaintiff there is a different defendant. Thus, the problems in managing such a class persuade me that prosecuting this case as a class action is not the superior method.

representatives] must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). Moreover, "the courts have focused on whether there are potential conflicts between the class representatives and the unnamed members of the class." *Santiago v. City of Philadelphia*, 72 F.R.D. 619, 625 (E.D.Pa. 1976). Finally, whether or not the representative parties can adequately represent a class "depends on all the circumstances of the particular case." *Wetzel, supra*, 508 F.2d at 247.

In this case, I do not question the competency of counsel for the private defendants. Their counsel is experienced in tax sale cases and I have no doubt that he will pursue this matter vigorously. My chief concern stems from the fact that I do not believe that the private defendants can adequately protect the interests of the absent class members.

Property owners who have purchased at tax sales have only two things in common: first, they had nothing to do with the mechanics of the sale or any of the purported constitutional defects advanced by the plaintiffs; second, these purchasers do not want the sale set aside. In all other respects they are disparate: each has a different stake in the outcome of this type of litigation, each has different resources to commit, each has a different reason to commit or not commit those resources, and each has a different defense to assert. For example, the named private defendants are speculators who regularly attend tax sales and make purchases. They are sophisticated and knowledgeable in this area. Tax sales are an integral part of their business activities and they have willingly accepted whatever risks are involved, known or unknown. Other purchasers may have bought only at one sale and may have done so without much knowledge or any experience. Some purchasers may have improved their properties; others have not. Some have subdivided—others may have assembled a tract by several tax sale purchases. Some may have added by a tax sale purchase to a previously owned and improved property. Others may have straightened a border—solved an adverse user problem—or extinguished an easement by a tax sale purchase. Some have spent a lot of money to buy; others practically nothing. Some have purchased, failed to pay taxes, and permitted the land to be resold at a subsequent sale. Great is the likelihood that no two have the same interest in the outcome of this litigation or any other similar suit that might be brought.

In their complaint, plaintiffs suggest that many of the proposed plaintiff class are aged, sick, infirm, or inflicted with the loss of mental powers. Many, the complaint alleges, have "little education and are unsophisticated regarding the presence and meaning of tax bills and sales, and hence are unaware of the swift and grave consequences of their failure to pay taxes." According to the complaint, notice of the pending sale at which the Tunstalls' property was sold was constitutionally inadequate because the certified mail receipt was signed only by Mrs. Tunstall. The complaint alleges that notice to the Masseys, who were absentee owners, was constitutionally deficient because it was not delivered to either of them. Rather, it went to the property by certified mail and was received by their daughter-tenant who failed to tell her parents that it had come. For each possible plaintiff there may be a different reason asserted as to why a certain sale should be set aside.[6] Since each property pairs a potential plaintiff and his contentions with a potential defendant, each defense will be somewhat different. There are infinite degrees of "loss of mental powers" and "little education." To place all defendants into one class, or even a number of sub-classes, would be to require them to accept representation from others with widely different interests and defenses.

---

6. The class action technique is not designed to enforce individual rights arising out of differing factual situations. *Caldwell v. Craighead*, 432 F.2d 213, 217 (6th Cir. 1970), *cert. denied*, 402 U.S. 593, 91 S.Ct. 1617, 29 L.Ed.2d 123 (1971).

While the named defendants may be quite knowledgeable, I conclude the interests of all the potential defendants may vary so much that lumping them together in a class or in a group of classes would deny them the adequate representation the rule says they should have.

Moreover, since each defendant is linked by a property to a potential plaintiff, a class of defendants in this case would make no sense and achieve none of the objectives of Rule 23 if there was no plaintiff class. For all these reasons, I conclude that certification of a defendant class is not warranted.[7]

### ORDER

AND NOW, this 6th day of July, 1981, it is hereby ordered that:

1. The private defendants' motion to dismiss and or for summary judgment as to the Tunstalls only is granted as to Counts One, Two, Three, Four, Seven (except insofar as this Count relates to the allegations advanced in Counts Five and Six), and Eight of the amended complaint. In all other respects, this motion is denied.

2. Plaintiffs' motion for class certification is denied in all respects.

3. The pleadings are considered to be amended to eliminate all allegations as to representations of absent parties.

4. A pre-trial conference will be held on Wednesday, July 22, 1981, at 9:15 A.M. to discuss remaining discovery, settlement, and preparations for trial.

---

**7.** Since I am denying certification of the proposed defendant class on a failure to meet the requirements of Rule 23(a), I need not discuss the remaining standards for class certification.