JOSEPH L. Jr. and Mary Tunstall and Joseph Massey, etc.

v.

OFFICE OF JUDICIAL SUPPORT, etc., et al.

Civ. A. No. 75–3103.

United States District Court, E.D. Pennsylvania.

June 24, 1986.

C. Norwood Wherry, Media, Pa., David A. Scholl, Lehigh Valley Legal Services, Allentown, Pa., for plaintiff.

Michael J. Ehling, Office of Judicial Support—Court House, Media, Pa., Alfred O. Breinig, Jr., Jenkintown, Pa., for defendant.

MEMORANDUM AND ORDER

DITTER, District Judge.

This case comes before the court on a petition for counsel fees pursuant to 42 U.S.C. § 1988, the Civil Rights Attorney's Fees Awards Act of 1976. Plaintiff's petition was brought following the settlement of his claim that a sale of his real estate by Delaware County for tax purposes was unconstitutional. The defendant from which the fees are sought was the purchaser at the tax sale. Under the terms of the settlement, the property was returned to the plaintiff who, in turn, reimbursed the defendant for payment of various taxes. I conclude that because of the special circumstances of this case counsel fees should not be awarded.

On February 4, 1946, Joseph Massey and his late wife, Mozelle, purchased 710 West Cooke Avenue, Darby Township, Delaware County, Pennsylvania. The Masseys resided there until 1966, when they moved to a house on Route 1, Rohn Avenue, Newfield, New Jersey. When the Masseys moved to New Jersey, they rented the Cooke Avenue property to their daughter and son-in-law, Dorothy and Adolphus Collins. Although

the Masseys visited the Collins family on most Sundays, they did not remain overnight.

On October 27, 1969, the property was sold at a Delaware County treasurer's tax sale for nonpayment of 1967 real estate taxes, pursuant to 72 Pa.Stat.Ann. § 5971a (Purdon 1968 & Supp.1985). Grace Building Company, Inc., purchased the property for $268.06 at a time when its fair market value was approximately $6,000 to $8,000. On January 30, 1970, the Court of Common Pleas of Delaware County confirmed the sale nisi. The Masseys took no exception to this decree and the Treasurer then conveyed the property to Grace Building by deed dated October 27, 1969.

Starting for the year 1967, and until 1971, Grace Building paid all real estate taxes, a total of $1663.80. Meanwhile, Mr. and Mrs. Collins remained in possession of the property, but paid no rent to Grace Building. On December 8, 1971, Grace Building filed an action to quiet title, its purpose being to obtain possession of the premises from Mr. and Mrs. Collins and to establish that the Masseys had no defense to the 1969 tax sale.

Prior to the tax sale, the treasurer's office provided notice by publication and by certified mail. The first certified mail notice was addressed to "Joseph or Mozelle Massey, 710 Cooke Avenue, Glenolden, Pa." The return receipt bore the signature "Dorothy Collins" and was dated August 8, 1969. The treasurer's office sent a second certified mail notice to the Masseys at the same address. The return receipt for the second notice bore the signature "Mozelle Massey" and was dated August 29, 1969. Mr. Massey contended that the signature was not that of his late wife,[1] they never received either of the mail notices, and they had not seen the published notice. In accordance with its customary, though not statutorily required practice, in November, 1969, the treasurer's office notified the Masseys by regular mail addressed to 710 West Cooke Avenue that their property had been sold on October 27, 1969, and that they had two years in which to redeem it. Neither Mr. Massey nor Mrs. Collins recalled receiving that notice.

This same property had previously been sold at a treasurer's tax sale on October 24, 1966, for the nonpayment of 1964 taxes and the Masseys had redeemed it within the two-year grace period. In 1965 and 1966 the Masseys paid taxes on this property only after receiving notice that the premises would be sold at a treasurer's tax sale. Two other lots on Cooke Avenue owned by the Masseys were also sold at the October 27, 1969, tax sale. The Masseys redeemed them on August 10, 1970. From 1964 through 1969, the Masseys paid the taxes on these two lots only after the taxes had been filed as delinquent in the treasurer's office and in many cases only after receiving notice that the lots would be sold at a treasurer's tax sale. A total of 186 properties were sold by the treasurer on October 27, 1969. Of that number, 97 were subsequently redeemed by or on behalf of their former owners.

Massey and other plaintiffs filed their complaint in the instant case on October 21, 1975, against the appropriate Delaware County officials, Grace Building, and other tax sale purchasers, requesting a declaratory judgment that all Delaware County tax sales held pursuant to the County Return Act were unconstitutional as violative of the due process guarantee of the fourteenth amendment; injunctions preventing tax sale purchasers from commencing or proceeding with state court actions to quiet title and preventing the prothonotary of Delaware County from accepting such actions for filing; and, an order setting aside the tax sales as to former owners who would pay the Delaware County treasurer all taxes, penalties, interest, and costs for which the properties had been sold and which were presently due. Plaintiffs' claims were grounded upon the assertion

---

1. Mrs. Massey died on July 21, 1973. Although Massey contended his wife always took care of paying the taxes, it is obvious that her death did not occur until long after the property had been sold for their non-payment.

that due process had been denied because there had been no personal service of either the notice that their property would be sold for taxes or of the notice that they had a right to redeem.

Almost from the beginning, Delaware County asserted no defense. The county's position was that it had no power to rescind the sale, but it would not object if I ordered the property to be returned to the former owners. Additionally, the county agreed to discontinue the challenged practices in the future conduct of tax sales. Grace Building agreed to stay its action to quiet title pending the outcome of this suit.

On July 11, 1977, I dismissed the complaint believing the facts fell within the abstention doctrine, *Johnson v. Kelly*, 436 F.Supp. 155 (E.D.Pa.1977). I did not reach the merits of the plaintiffs' claims or issues concerning class certification. After the court of appeals reversed and remanded, 583 F.2d 1242 (3d Cir.1978), I refused plaintiffs' motion for class certification. *Joseph L. v. Office of Judicial Support*, 516 F.Supp. 1345 (E.D.Pa.1981).[2] During the course of the proceedings all parties except Massey and Grace Building settled their respective claims. Massey then agreed to pay $1800 to Grace Building in exchange for a quitclaim deed for the property. Massey's attorneys now seek $12,393.50 in fees from Grace Building.

■ The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, provides in part that in any action or proceeding to enforce civil rights "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." In general, the Congressional purpose in providing counsel fees was to encourage private enforcement and the vindication of civil rights. *See* S.Rep. No. 1011, 94th Cong., 2d Sess. 2, *reprinted in* 1976 U.S. Code Cong. & Admin.News 5908, 5910. A successful party should ordinarily recover attorneys' fees unless special circumstanc-

es would render such an award unjust. *Skehan v. Bd. of Trustees*, 590 F.2d 470, 496 (3d Cir.1978), *cert. denied*, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979).

■ For the purposes of this opinion, I have assumed that Grace Building is a state actor within the scope of section 1983 and that Massey is a "prevailing party," despite serious doubt as to both of these conditions required for an award of attorney's fees under the statute. First, it is doubtful that Grace Building acted "under color of any statute" when it purchased the property at the treasurer's sale. *See Flagg Bros. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). Second, it is doubtful that Massey is a prevailing party. In deciding whether a settling plaintiff is a prevailing party, the first step is to compare the relief sought with what was actually obtained. The second step is to determine the causal connection between the relief obtained and the litigation. *See Disabled in Action in Pennsylvania v. Pierce*, 789 F.2d 1016, 1019 (3d Cir.1986). Here, Massey obtained a house that had been abandoned and vandalized, was little more than a shell, and was subject to back taxes of more than $6,000. While Delaware County changed the manner in which it conducted treasurer's sales, this, of course, is no basis for charging counsel fees against Grace Building. Additionally, it is far from clear that Grace Building settled with Massey because of this suit as contrasted with settling because it no longer wanted the property. Grace Building recouped from Massey all that it had spent and was relieved of further tax liability on a property of questionable value. Counsel fees should not be awarded to a plaintiff whose only success was to obtain a nuisance-value settlement. *See Chicano Police Officer's Ass'n v. Stover*, 624 F.2d 127, 131 (10th Cir.1980). Despite these reservations on my part that Massey was a "prevailing party," the basis of refusing to award counsel fees against Grace Building

---

**2.** In addition, I dismissed as being barred by res judicata certain claims asserted by other plaintiffs against one of the remaining defendants.

Counsel made no further efforts to prosecute the class action aspects of the case.

is my finding that there are special circumstances in this case which would make it unjust to do so.

First, and most obviously, Grace Building had no part in the alleged constitutional violation and was in fact powerless to prevent whatever violation was caused by the county. *See Chastang v. Flynn & Emrich Co.*, 541 F.2d 1040, 1045 (4th Cir.1976) (special circumstances warranting denial of counsel fees where defendant was powerless to prevent constitutional violation and award would penalize persons who had no part in violation) *cited with approval in Staten v. Housing Authority of Pittsburgh*, 638 F.2d 599, 605 n. 13 (3d Cir.1980). All Grace Building did was to buy the property at an apparently lawful tax sale, which was then confirmed by the Court of Common Pleas. Grace Building had nothing to do with whether the taxes were paid, the decision to sell the property, the method of giving notice, whether notice was received, how the sale was conducted or whether the property was redeemed. Indeed, if no one else had purchased the plaintiff's property, the county would have and Massey would have lost his property regardless of Grace Building's activity. In short, Grace Building was a third party who did nothing to deprive Massey of his property, could not have prevented the deprivation, and purchased the property in good faith only after the alleged violation had been completed. To assess attorney's fees against Grace Building under these circumstances would not further the policy of encouraging those who act as a private attorney general in vindicating a constitutional deprivation. *See Naprstek v. City of Norwich*, 433 F.Supp. 1369 (N.D.N.Y.1977) (special circumstances found when award of attorney's fees would not further the policy of the statute) *cited with approval in Staten v. Housing Authority of Pittsburgh*, 638 F.2d 599, 605 n. 13 (3d Cir.1980).

The second special circumstance which would make it unjust to award fees against Grace Building is its conduct throughout the entire history of this action. Having purchased the property without notice of any alleged violation of Massey's constitutional rights, Grace Building did nothing until the two-year redemption period expired. In the meantime, the sale had been confirmed nisi by a court of competent jurisdiction, no exception by Massey had been taken to that sale, and the property had been conveyed to Grace Building by the Delaware County treasurer. Grace Building then began its action to quiet title, the first step under Pennsylvania law to perfect title after a tax sale. While the quiet title action was pending, and even after the present suit was filed (more than five years after the tax sale), Grace Building allowed Mr. and Mrs. Collins to occupy the property without paying rent. Additionally, Grace Building agreed to stay its quiet title action, or any action for possession of the property until the present litigation was resolved. Indeed, Grace Building's good faith is shown by the fact that it voluntarily accomodated plaintiff, while the instant suit was pending, in every request plaintiff made in his complaint. *Accord Chastang v. Flynn & Emrich Co.*, 541 F.2d at 1045 (special circumstances found where defendant acted in good faith to redress a violation it was powerless to prevent). The most that can be said against Grace Building is that it defended itself in this action. In view of the strength of defendant's position on the merits, there was no reason for it to do otherwise.

In contrast to Grace Building's good faith is Massey's own culpability. This is the third special circumstance which would make it unjust to award counsel fees. Plaintiff's wounds were self-inflicted.[3] He was the one who moved out of the property, county, and state without providing the tax collector with a forwarding address and without paying his taxes. He was the one who did not redeem this property—even

---

3. This was not the case with other plaintiffs in this action. For example, see the factual averments in the complaint as to Doris E. Johnson, who reasonably could have expected real estate taxes to be paid by a trustee, and as to Joseph and Mary Tunstall, who reasonably could have expected their mortgagee to pay their real estate taxes.

though he redeemed other properties on the same street which had been sold at the same tax sale. Massey was thoroughly familiar with the fact that real estate taxes exist, and what would happen if they were unpaid. He had walked close to the tax-sale stream on many prior occasions and had even fallen into it twice. To suggest that he did not know it was there is at best creative.

While this suit may have provided a commendable vehicle for establishing new county procedures for giving notice of a tax sale and the opportunity to be heard, this factor urges the assessment of fees against the county, not Grace Building. To require counsel fees of $12,393.50 from a defendant who had no part in any constitutional deprivation and who acted in good faith throughout the prelitigation and litigation phases of this action, for a plaintiff who brought his problems on himself and to the extent that he suffered a constitutional deprivation did so at the hands of another party, would be a great travesty on justice.

### ORDER

AND NOW, this 24th day of June, 1986, it is hereby ordered that plaintiff's petition for attorney's fees pursuant to 42 U.S.C. § 1988 is denied.