Alice DECKER, Patricia Hayes, and Marilyn Z. Hempstead, Plaintiffs,

v.

UNITED STATES DEPARTMENT OF LABOR et al., Defendants.

Civ. A. No. 78–C–634.

United States District Court, E. D. Wisconsin.

July 31, 1979.

Mary Jo Schiavoni and Michael A. Campbell, Milwaukee, Wis., for plaintiffs.

William E. Callahan, Jr., Asst. U. S. Atty., Milwaukee, Wis., Keith M. Werhan and Paul Blankenstein, Attys., Dept. of Justice, Washington, D. C., for Federal defendants; Harry L. Sheinfeld, Atty., Dept. of Labor, Washington, D. C., of counsel.

Bronson C. LaFollette, Atty. Gen., David C. Rice, Asst. Atty. Gen., Madison, Wis., for defendant, Governor Lee S. Dreyfus.

David P. Lowe, Milwaukee, Wis., for defendant, William F. O'Donnell, Milwaukee Co. Executive.

Toby E. Marcovich, Superior, Wis., for defendant, James Bonney, Executive Director, Northwest CEP Prime Sponsor.

Gerald L. Engeldinger, Corp. Counsel, Oshkosh, Wis., for defendant, Alan Wentz, Executive Secretary, WINNE–FOND Consortium.

Henry A. Gempeler, City Atty., and Eunice Gibson, Asst. City Atty., Madison, Wis., for defendant, Pam Anderson, Director, Madison-Dane Consortium.

Victor Moyer, Corp. Counsel, Janesville, Wis., for Kenyon Kies, Director, Rock County Prime Sponsor.

Willis J. Zick, Corp. Counsel, Waukesha County, Waukesha, Wis., for defendant, Leonard Cors, Director, W–O–W Consortium.

James T. Runyon, Wausau, Wis., for defendant, John Cook, Director, Marathon County Prime Sponsor.

Richard L. Hamilton, Corp. Counsel, Outagamie County, Appleton, Wis., for defendant, Jim Lauer, Director, Outagamie County Prime Sponsor.

T. Michael Bolger, Patrick W. Schmidt, and Patricia A. Graczyk, Milwaukee, Wis., for intervening defendants and Quarles & Brady, Milwaukee, Wis., of counsel for intervening defendants.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action for injunctive relief brought pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331(a), 1337, 1343(3), and 1361. The plaintiffs, who are federal income taxpayers residing in Wisconsin, challenge the award of grants and contracts under Title II of the Comprehensive Employment Training Act of 1973, as amended, 29 U.S.C. § 841 et seq. ("CETA"), to religious institutions for the employment of teachers and other staff for parochial schools. The defendants the United States Department of Labor and Ray Marshall are charged with administering grants under the CETA program at the federal level. 29 U.S.C. § 982. The remaining ten defendants are the ten prime sponsors, including the Governor, in the State of Wisconsin who are charged with administering grants under the CETA program at the state and local levels. 29 U.S.C. §§ 811 and 844. The plaintiffs seek an injunction requiring the defendants to withhold funds under grants and contracts with religious institutions for the employment of staff for parochial schools for fiscal 1979 and future years, to terminate all such existing positions, and to exercise their discretion under the CETA Act to recover funds paid under such contracts and grants for fiscal 1978.

Presently pending before the court are plaintiff's motion for a preliminary injunction, a motion for leave to intervene as defendants brought by the Catholic Archdiocese of Milwaukee, Pius XI High School, Lawrence W. McCall, John Broczek, and Candace Warlin; a motion for leave to intervene as defendants brought by the Catholic Dioceses of Madison, Green Bay, La-Crosse, and Superior; stipulations for settlement of the action against five of the defendants, i. e., James Bonney, Alan Wentz, Kenyon Kies, John Cook, and Jim Lauer; and defendant-intervenors' motion for an order vacating the settlement between the plaintiffs and the defendant Governor Lee S. Dreyfus, which settlement was approved by the Court on January 31, 1979. For the following reasons, the motion to intervene by the Archdiocese of Milwaukee, et al., will be granted in part and denied in part, the motion to intervene by the other dioceses will be granted, the motion to vacate the Court's approval of the settlement between plaintiffs and defendant Dreyfus will be denied, the five proposed settlements will be approved, and the plaintiffs' motion for a preliminary injunction will be granted as to the defendants the United States Department of Labor, Ray Marshall,

William F. O'Donnell, Pam Anderson, and George A. Moore.[1]

*Motions to Intervene*

The Archdiocese of Milwaukee is a private, nonprofit corporation which receives CETA funds from the defendant William F. O'Donnell, the prime sponsor for Milwaukee County. For the 1977–78 school year, it was allocated $328,618 in CETA funds and employed 39 persons under the CETA program, and it has applied for funding for 62 CETA positions for 1979. (Leslie A. Darnieder's affidavit filed December 6, 1978, paragraphs 4, 5, and 8.) Pius XI High School, which employs several CETA workers, is a division of the Archdiocese. It received funding from Milwaukee County through the Archdiocese in the amount of $53,293.09 for seven CETA employees through October 31, 1978, and has applied for eight CETA positions for 1979. (Lawrence W. McCall's affidavit filed December 6, 1978, paragraphs 9–10.) Lawrence W. McCall is the principal of Pius XI. John Broczek and Candace Warlin are CETA employees at Pius XI. (Affidavits of Broczek and Warlin filed December 6, 1978.) The Dioceses of Madison, Green Bay, LaCrosse, and Superior are also present recipients of CETA funds. (Leslie A. Darnieder's affidavit filed January 22, 1979, paragraph 3.)

Those parties seek leave to intervene as defendants in this action pursuant to Rule 24(a) or (b) of the Federal Rules of Civil Procedure. They assert that they have a direct interest in continued receipt of CETA funds, which interest is threatened by this litigation and is not adequately protected by the named parties, all of whom have entered into or allegedly are considering entering into consent decrees with the plaintiffs to terminate the litigation as to themselves on condition of ceasing to make CETA grants or contracts with parochial institutions. (Patrick W. Schmidt's affidavit filed December 6, 1978, paragraphs 4–6.) Broczek and Warlin are currently employed under the CETA program at Pius XI High School as a motivational research assistant and a printing and mailing clerk, respectively, and if the relief which plaintiffs seek is granted, they will lose their current positions with no guarantee of alternate placement, although the consent decrees previously entered into provide that defendants will make an effort to find jobs for displaced employees. (See proposed consent decrees received January 24, 1979; January 25, 1979; February 7, 1979; February 12, 1979; and February 21, 1979.)

Rule 24(a) of the Federal Rules of Civil Procedure provides in part:

"Upon timely application anyone shall be permitted to intervene in an action: * * * (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

While the purpose of the CETA program is to aid economically disadvantaged persons in improving their employment capacity, 29 U.S.C. § 841, and not to subsidize the employers of those persons, *Hood River County v. United States, Department of Labor,* 532 F.2d 1236, 1238 (9th Cir. 1976), in *Hood River County* the Court permitted intervention by the employer-grantee, the legality of whose grant was at issue. Similarly, it appears to be a common practice in cases arising under the First Amendment wherein the funding of educational aid programs is challenged on separation of church and state grounds to allow intervention by the parochial recipient of the federal funds,

1. The previously approved settlement with defendant Dreyfus and the settlements which the Court approves contemporaneously with this decision and order between plaintiffs and the defendants James Bonney, Alan Wentz, Kenyon Kies, John Cook, and Jim Lauer terminate the action in its entirety against those six defendants. By letter dated February 26, 1979, the plaintiffs informed the Court that they do not presently seek injunctive relief against the defendant Leonard Cors because no CETA funds are being disbursed by him for staff positions at parochial schools.

even where the congressional purpose of the program is to aid the school children and not the sectarian institution. See, e. g., *Wolman v. Walter*, 433 U.S. 229, 233, 97 S.Ct. 2593, 53 L.Ed.2d 714 (1977); *Meek v. Pittenger*, 421 U.S. 349, 356 n. 6, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975); *Levitt v. Committee for Public Education & Religious Liberty*, 413 U.S. 472, 478, 93 S.Ct. 2814, 37 L.Ed.2d 736 (1973).

In this case, in addition to their interest in the additional services which they are able to provide to their students through continued receipt of CETA funds, which interests are similar to those on the basis of which intervention was allowed in *Wolman*, supra, *Meek*, supra, and *Levitt*, supra, the Archdiocese of Milwaukee and the other diocese-intervenors may be required to reimburse the federal government for CETA funds previously received and spent if plaintiffs prevail, and thus they have a direct pecuniary interest in the outcome of the suit. (Complaint, paragraphs 1 and 14.) As for the defendant-intervenors Broczek and Warlin, they also have a direct interest in the subject of this action, since it may well result in termination of their present employment with no guarantee of future placement and continued employment. See *Lendall v. Cook*, 432 F.Supp. 971 (E.D.Ark.1977). The defendant-intervenors Pius XI High School and Lawrence W. McCall will not, however, be permitted to intervene at·this time, absent a clearer showing by them of a protectible interest in the outcome of the suit. It appears that Pius XI receives CETA funding only from the Archdiocese and is not itself a grantee of the prime sponsor Milwaukee County. Therefore, whatever interest Pius XI, and McCall as its principal, have in this suit is subsumed in the interest of the Archdiocese.

The intervenors by their attorneys have participated in the briefing and the oral argument held on plaintiffs' motion for a preliminary injunction. Therefore, since they have had an adequate opportunity to participate in this action and have made good use of that opportunity, the Court will proceed to consider the plaintiffs' motion.

*Motion for a Preliminary Injunction*

The plaintiffs seek to enjoin the defendants the United States Department of Labor and Ray Marshall from granting or awarding CETA funds to any prime sponsor for use in creating or continuing public service employment positions in any elementary or secondary school operated by or for any religious or sectarian institution; to enjoin the defendant prime sponsors from granting, awarding, or contracting for payment of any CETA funds for full-time or part-time employees of any elementary or secondary school operated by or for any religious or sectarian organization; to require the defendant prime sponsors to terminate all such existing grants, awards, and contracts; and to prohibit any further payment thereunder. In addition, plaintiffs seek an order requiring the defendant prime sponsors to transfer all persons who are employed under contracts terminated by the preliminary injunction to other public service employment within public school systems under the defendants' jurisdiction.

The plaintiffs claim that the defendants have funded various employee positions at elementary and secondary schools operated by or for sectarian organizations, and that such funding violates the Establishment Clause of the First Amendment to the United States Constitution and 29 U.S.C. § 823(a)(2) [former § 848(h)], which provides:

"Except as otherwise provided, the following conditions are applicable to all programs under this chapter:

"(a) * * * (2) Participants shall not be employed on the construction, operation, or maintenance of so much of any facility as is used or to be used for sectarian instruction or as a place for religious worship."

Despite the statutory reference, however, the primary focus of all parties has been on the First Amendment, and it is on that basis that the Court considers the grants.

The record is not entirely clear as to the exact employee positions in elementary and

secondary schools run by or for sectarian organizations which are presently being funded under the CETA program. It is clear, however, that such positions do presently or have in the past been funded throughout the State (Leslie A. Darnieder's affidavits filed December 6, 1978 and January 22, 1979), and in Milwaukee County, for example:

> "5. The 1977–78 award to the Archdiocese [of Milwaukee] funded 39 CETA employees in various Archdiocesan schools. CETA employees have been hired as reading, math, music and art teachers, aides, librarians, tutors, learning disability specialists, speech therapists, guidance and occupational counselors, maintenance workers, housekeepers, kitchen aides and meal planners, nutrition and health co-ordinators, day care assistants, typists, clerical aides and testing specialists. In addition to these positions, the 1979 proposals include requests for CETA employees as athletic directors, and physical education, recreation and playground supervisors." (Leslie A. Darnieder's affidavit filed December 6, 1978, paragraph 5.)

See also Exhibits A–D to plaintiffs' brief in support of their motion for a preliminary injunction, filed October 3, 1978; defendant-intervenors' brief in opposition to plaintiffs' motion for a preliminary injunction, filed January 26, 1979, at pages 4–5.

The defendant-intervenors argue that while any substantial deprivation of a constitutional right constitutes irreparable harm, 11 Wright & Miller's Federal Practice and Procedure § 2948 at 440, the plaintiffs have failed to show that the threatened injury to themselves if the injunction is denied outweighs the threatened harm to the defendant-intervenors if the injunction is granted and that the injunction is in the public interest. *Fox Valley Harvestore, Inc. v. A. O. Smith Harvestore Products,*

*Inc.,* 545 F.2d 1096, 1097 (7th Cir. 1976); *Kolz v. Board of Education of City of Chicago,* 576 F.2d 747, 748 (7th Cir. 1978). Defendant-intervenors also argue that the plaintiffs have failed to show a likelihood of success on the merits as to the full remedy which they seek because it is more likely than not that at least some of the CETA-funded positions in parochial schools are permissible under the First Amendment. The federal defendants concede that many of the CETA-funded positions are probably impermissible under the First Amendment (brief filed January 26, 1979, at pages 3–4), but they too argue that certain of the positions are lawful, e. g., day care assistants, health aides, kitchen aides, and clerical workers with nonsecular responsibilities, and they suggest that the Court await the outcome of their in-process rule-making procedure covering job placements in sectarian elementary and secondary schools pursuant to 29 U.S.C. § 801 et seq. before issuing a decision on the plaintiffs' motion.[2] With the exception of the defendant O'Donnell, the defendant prime sponsors have not responded to the plaintiffs' motion.

■■■ The Court finds that the defendant-intervenors' and defendants' objections to the proposed preliminary injunction are without merit, and that the plaintiffs' motion should be granted. As stated in *Fox Valley Harvestore, Inc.,* supra, at 1097:

> " * * * The discretion exercised by the district court [in granting a preliminary injunction] is measured against several prerequisites: (1) the plaintiffs have no adequate remedy at law and will be irreparably harmed if the injunction does not issue; (2) the threatened injury to the plaintiffs outweighs the threatened harm the injunction may inflict on the defendant; (3) the plaintiffs have at least a reasonable likelihood of success on the merits; and (4) the granting of a preliminary injunction will not disserve the public interest. * * * "

**2.** The Court has previously granted two requests by the federal defendants for a stay of proceedings on the injunction while the federal defendants complete their rule-making procedure. Since the federal defendants have not done so although proposed rules implementing 29 U.S.C. § 823(a)(2) were published in Vol. 44 of the Federal Register, No. 120, at page 36087 on June 20, 1979, the Court declines to wait any longer for the federal defendants to complete the process.

As stated above, irreparable injury is assumed to flow from a constitutional violation, and plaintiffs are not required to show harm beyond the violation. 11 Wright & Miller's, supra, § 2948 at 440. Similarly, the public interest is served by any abatement of unconstitutional activity. *Illinois Migrant Council v. Pilliod*, 540 F.2d 1062, 1071 (7th Cir. 1976), mod. 548 F.2d 715 (7th Cir. 1977) (en banc).

■ The balancing of the injury to the plaintiffs from denying the injunction against the harm to the defendants from granting it presents a more difficult problem, primarily because of the harm which will flow to the CETA-funded employees in secondary and elementary sectarian schools, including the defendant-intervenors Warlin and Broczek who will lose their present positions without guarantee of alternate placement. That harm will be minimized, however, by plaintiffs' request for an order requiring the defendant prime sponsors to make efforts to find such alternate placement. In addition, even when the harm to defendants is severe, "when plaintiff's claim is sufficiently compelling," preliminary injunctive relief should be granted even where it provides to the plaintiffs the ultimate relief which they seek. 11 Wright & Miller's, supra, § 2948 at 447. The Court has no doubt that plaintiffs have a substantial likelihood of success on the merits of this case with regard to the entire remedy which they seek (see discussion below), and therefore it gives less weight than it otherwise might to the threatened harm to the CETA-funded employees. As for the other defendants and the other defendant-intervenors, compelling the federal defendants and the defendant prime sponsors to comply with the First Amendment does not impose an undue burden on them. *Illinois Migrant Council v. Pilliod*, supra, at 1071. The defendant Archdiocese of Milwaukee and the other Dioceses have no claim of entitlement under the CETA Act to the CETA funds; by their own admissions their CETA-funded

employees fill positions which did not exist prior to the receipt by the defendant-intervenors of CETA funds and which will terminate with the funds (Lawrence W. McCall's affidavit filed December 6, 1978, paragraph 11; Leslie A. Darnieder's affidavit filed December 6, 1978, paragraph 6); and, finally, the plaintiffs' request for the return of funds previously provided to the defendant-intervenors is not a part of the preliminary relief requested, and therefore the only threatened direct out-of-pocket loss to the defendant-intervenors will occur, if at all, only after a full trial.

■ In *Lemon v. Kurtzman*, 403 U.S. 602, 612–613, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971), the Supreme Court set forth the test which is to be applied in evaluating the constitutionality of a statute challenged under the Establishment Clause of the First Amendment:

"* * * First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion, *Board of Education v. Allen*, 392 U.S. 236, 243, 88 S.Ct. 1923, 1926, 20 L.Ed.2d 1060 (1968); finally, the statute must not foster 'an excessive government entanglement with religion.' *Walz [v. Tax Commission*, 397 U.S. 664 (1970)], supra, at 674, 90 S.Ct. at 1414"

See also, e. g., *Levitt v. Committee for Public Education & Religious Liberty*, 413 U.S. 472, 481, 93 S.Ct. 2814, 37 L.Ed.2d 736 (1973); *Meek v. Pittenger*, 421 U.S. 349, 358, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975). Based on the record before it, the Court is persuaded that the funding of CETA employees in elementary and secondary sectarian schools, at least as it is presently carried out by the defendants, causes "an excessive government entanglement with religion" and is therefore unconstitutional.[3]

First, the CETA Act itself provides for substantial state involvement with the subgrantees through supervision and auditing

---

**3.** The Court expresses no view as to whether the federal government through use of its rule-making procedure under 29 U.S.C. § 801 et seq. could, consistent with the First Amendment, provide for the funding of CETA employees in certain positions in elementary and secondary sectarian schools.

of the subgrantees by the prime sponsors and ultimately by the United States Department of Labor and Secretary Marshall. 29 U.S.C. § 813(a)(12), for example, requires that in order to receive financial assistance, a prime sponsor shall submit to the defendant Marshall a comprehensive employment and training plan which shall "include a detailed description of procedures for the monitoring and auditing of any subgrantees or subcontractors." 29 U.S.C. § 814 requires that before submitting a plan to the defendant Marshall, each prime sponsor shall make the plan available to the state legislature, community based organizations, and the public for review and comment. 29 U.S.C. § 816 requires each prime sponsor to establish a grievance procedure for complaints arising under the Act with ultimate review by the defendant Marshall, and 29 U.S.C. § 817 allows for judicial review of the Secretary's final decision. See also 29 U.S.C. § 843(c)(3); 29 C.F.R. § 98.27(d); paragraphs 11 and 12 and Exhibit 3 to the stipulation of facts filed February 2, 1979, setting forth Milwaukee County's grievance procedure.

Second, under the current law as set forth by the Supreme Court in a series of cases arising under the Establishment Clause of the First Amendment, certain of the employee positions which have been funded by the CETA grants by their nature lead to an excessive entanglement of church and state and constitute unlawful subsidization by the state of church-related activities. For example, the Archdiocese of Milwaukee has employed CETA workers as "reading, math, music and art teachers, aides, * * * [and] tutors." (Darnieder's affidavit filed December 6, 1978, paragraph 5.) In *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), the Court struck down two statutes providing for subsidization of teachers' salaries because of the potential created thereby for the impermissible fostering of religion and the extent of involvement by the State which would be required to insure that the teachers play a strictly nonideological role. In *Meek v. Pittenger*, 421 U.S. 349, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975), the Court

struck down a statute providing for state-funded counseling, testing, psychological services, speech and hearing therapy, and related services for exceptional, remedial, or educationally disadvantaged students in sectarian schools. In *Committee for Public Education & Religious Liberty v. Nyquist*, 413 U.S. 756, 93 S.Ct. 2988, 37 L.Ed.2d 948 (1973), the Court invalidated a law providing a subsidy for maintenance and repair at sectarian schools because it failed to differentiate between areas of the school which were devoted to sectarian and to nonsectarian purposes. Milwaukee County CETA grants have also funded learning disability specialists, speech therapists, guidance and occupational counselors, and maintenance workers. (Darnieder's affidavit filed December 6, 1978, paragraph 5.)

It may be that certain of the employee positions in elementary and secondary schools which have been funded by CETA grants are not per se impermissible under the First Amendment. See, for example, *Wolman v. Walter*, 433 U.S. 229, 241, 242, 97 S.Ct. 2593, 53 L.Ed.2d 714 (1977) (school lunch services and public health services permissible); *Meek v. Pittenger*, 421 U.S. 349, 371 n. 21, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975) (speech and hearing services permissible under certain conditions). Milwaukee County has conceded, however, that in approving subgrants to the Archdiocese it makes no effort to determine the job content for the funded employees and no effort to supervise or direct the daily performance of the employees. (Stipulation of facts filed February 2, 1979, paragraphs 5 and 14.) In order to determine, however, which CETA-funded employees were fulfilling constitutionally permissible functions at the schools and to insure that there was no ideological content to their positions, the defendant prime sponsors would have to predetermine the job content and thereafter to involve themselves significantly in the activities of the schools in order to properly supervise the activities of the employees. Such involvement, in turn, would lead to excessive government entanglement with religion.

Thus, in *Meek v. Pittenger,* supra, in discussing the provision of funding for auxiliary services such as diagnostic counselling and psychological testing to sectarian schools, the Court stated:

" * * * To be sure, auxiliary-services personnel, because not employed by the nonpublic schools, are not directly subject to the discipline of a religious authority. Cf. *Lemon v. Kurtzman,* 403 U.S., at 618, 91 S.Ct. [2105] at 2113. But they are performing important educational services in schools in which education is an integral part of the dominant sectarian mission and in which an atmosphere dedicated to the advancement of religious belief is constantly maintained. See *id.,* at 618–619, 91 S.Ct. [2105] at 2114. The potential for impermissible fostering of religion under these circumstances, although somewhat reduced, is nonetheless present. To be certain that auxiliary teachers remain religiously neutral, as the Constitution demands, the State would have to impose limitations on the activities of auxiliary personnel and then engage in some form of continuing surveillance to ensure that those restrictions were being followed.

"In addition, Act 194, * * * creates a serious potential for divisive conflict over the issue of aid to religion—'entanglement in the broader sense of continuing political strife.' *Committee for Public Education & Religious Liberty v. Nyquist,* 413 U.S., at 794, 93 S.Ct. at 2976. The recurrent nature of the appropriation process guarantees annual reconsideration of Act 194 and the prospect of repeated confrontation between proponents and opponents of the auxiliary services program. The Act thus provides successive opportunities for political fragmentation and division along religious lines, one of the political fragmentation and division along religious lines, one of the principal evils against which the Establishment Clause was intended to protect. See *Lemon v. Kurtzman,* 403 U.S., at 622–623, 91 S.Ct. [2105] at 2116. This potential for political entanglement, together with the administrative entangle-

ment which would be necessary to ensure that auxiliary-services personnel remain strictly neutral and nonideological when functioning in church-related schools, compels the conclusion that Act 194 violates the constitutional prohibition against laws 'respecting an establishment of religion.'" 421 U.S. at 371–372, 95 S.Ct. at 1767.

In *Lemon v. Kurtzman,* 403 U.S. 602, 621, 91 S.Ct. 2105, 2115, 29 L.Ed.2d 745 (1971), the Court noted that where the funding, as in this case, is provided directly to the sectarian institution, an even greater danger of entanglement arises:

" * * * In *Walz v. Tax Commission,* [397 U.S. 664 (1970)], supra, 397 U.S. at 675, 90 S.Ct. at 1414, [25 L.Ed.2d 697,] the Court warned of the dangers of direct payments to religious organizations:

'Obviously a direct money subsidy would be a relationship pregnant with involvement and, as with most governmental grant programs, could encompass sustained and detailed administrative relationships for enforcement of statutory or administrative standards * * *.'

The history of government grants of a continuing cash subsidy indicates that such programs have almost always been accompanied by varying measures of control and surveillance. The government cash grants before us now provide no basis for predicting that comprehensive measures of surveillance and controls will not follow. * * *"

■ In this case, the statute itself provides the mechanisms for substantial state involvement with the sectarian subgrantees and subcontractors through its auditing provisions and administrative supervision provisions; it also creates the potential for continuing political strife through its provisions for state legislative and public review and comment on the prime sponsors' plans; and, as heretofore implemented by the defendants, the statute has been used to subsidize employee positions in sectarian schools which may not permissibly be subsidized under the First Amendment. In conjunction, all of those factors lead the Court to conclude that the defendants' actions in

providing grants and contracts to sectarian organizations have created an excessive government entanglement with religion and should be enjoined.

Since it is persuaded that the defendants cannot, consistent with the First Amendment, continue to provide CETA grants to sectarian organizations for the funding of employee positions in elementary and secondary sectarian schools, the Court declines to grant the defendant-intervenors' motion requesting it to vacate its order issued January 31, 1979, approving the stipulation for settlement of this action entered into between the plaintiffs and the defendant Dreyfus, and it also today approves the stipulations for consent decree agreed to between the plaintiffs and the defendants James Bonney, Alan Wentz, Kenyon Kies, John Cook, and Jim Lauer.

*Order*

For the foregoing reasons,

IT IS ORDERED that the motion for leave to intervene as defendants brought by the Archdiocese of Milwaukee, Pius XI High School, Lawrence W. McCall, John Broczek, and Candace Warlin is granted as to the Archdiocese of Milwaukee, John Broczek and Candace Warlin, and is denied as to Pius XI High School and Lawrence W. McCall.

IT IS FURTHER ORDERED that the motion for leave to intervene as defendants brought by the Diocese of Madison, the Diocese of Green, Bay, the Diocese of La-Crosse, and the Diocese of Superior is granted.

IT IS FURTHER ORDERED that the motion of the intervenor-defendants for an order vacating the order issued on January 31, 1979, approving the stipulation for settlement of this action entered into between the plaintiffs and the defendant Lee S. Dreyfus is denied.

IT IS FURTHER ORDERED that the plaintiffs' motion for a preliminary injunction is granted as to the defendants the United States Department of Labor, Ray Marshall, William F. O'Donnell, Pam Anderson, and George A. Moore; and said defendants, their agents, officers, successors in office, and all persons acting in concert and in participation with them in the administration of grants and awards under Title II of the Comprehensive Employment and Training Act of 1973, 29 U.S.C. § 841 et seq., as amended, are:

1. Prohibited from granting, awarding, or contracting for payment of any CETA funds for full-time or part-time employees of any elementary or secondary school operated by or for any religious or sectarian organization;

2. Required to terminate all such existing grants, awards, and contracts, and prohibited from making any further payment thereunder;

3. Prohibited from granting or awarding CETA funds for use in creating or continuing public service employment positions in any elementary or secondary school operated by or for any religious or sectarian institution, and required to terminate all .current and future funding under existing grants and awards for such public service employment; and

4. Required to make good faith efforts to transfer all persons who were employed under contracts terminated by virtue of this preliminary injunction to other public service employment within public school systems under their jurisdiction.