Alice DECKER, Patricia Hayes, and Marilyn Z. Hempstead, Plaintiffs,

v.

UNITED STATES DEPARTMENT OF LABOR; et al., Defendants.

Civ. A. No. 78–C–634.

United States District Court, E.D. Wisconsin.

May 23, 1983.

Mary Jo Schiavoni, Michael A. Campbell and Raymond Dall'Osto, Milwaukee, Wis., for plaintiffs.

William E. Callahan, Jr., Asst. U.S. Atty., Milwaukee, Wis., and Keith M. Werhan and Paul Blankenstein, Attys., Dept. of Justice, Washington, D.C., for Federal defendants; Harry Sheinfeld, Atty., Dept. of Labor, Washington, D.C., of counsel.

Bronson C. LaFollette, Atty. Gen., and David C. Rice, Asst. Atty. Gen., Madison, Wis., for defendant, Governor Lee S. Dreyfus.

David P. Lowe, Milwaukee, Wis., for defendant, William F. O'Donnell, Milwaukee Co. Executive.

Toby E. Marcovich, Superior, Wis., for defendant, James Bonney, Executive Director, Northwest CEP Prime Sponsor.

Gerald L. Engeldinger, Corp. Counsel, Oshkosh, Wis., for defendant, Alan Wentz, Executive Secretary, WINNE–FOND Consortium.

Henry A. Gempeler, City Atty., and Eunice Gibson, Asst. City Atty., Madison, Wis., for defendant, Pam Anderson, Director, Madison-Dane Consortium.

Victor Moyer, Corp. Counsel, Janesville, Wis., for Kenyon Kies, Director, Rock County Prime Sponsor.

Willis J. Zick, Corp. Counsel, Waukesha County, Waukesha, Wis., for defendant, Leonard Cors, Director, W–O–W Consortium.

James T. Runyon, Wausau, Wis., for defendant, John Cook, Director, Marathon County Prime Sponsor.

Richard L. Hamilton, Corp. Counsel, Outagamie County, Appleton, Wis., for defendant, Jim Lauer, Director, Outagamie County Prime Sponsor.

T. Michael Bolger, Patrick W. Schmidt, and Patricia A. Pacenta, Akron, Ohio, for intervening defendants; Quarles & Brady, Milwaukee, Wis., of counsel.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This action under 42 U.S.C. § 1983 was brought by the plaintiffs in October 1978. In July of 1979, this Court issued a preliminary injunction enjoining the use of Comprehensive Employment and Training Act (CETA) funds for parochial school personnel. 473 F.Supp. 770. The Court found that such funding violates the Establishment Clause of the First Amendment to the United States Constitution. That decision was reaffirmed in February 1980. 485 F.Supp. 837. The defendants appealed to the Seventh Circuit Court of Appeals. On September 9, 1980, the Seventh Circuit affirmed this Court, ordered that the injunction be made permanent, and remanded the action. 661 F.2d 598 (7th Cir.1980). Presently before the Court is the motion of the plaintiffs for an award of attorney's fees.

For purposes of this decision, the remaining party defendants compose three distinct groups: (1) the county defendants—Milwaukee County Executive William F. O'Donnell and Leonard Cors (Waukesha County); (2) the federal defendant—United States Department of Labor; and (3) the intervenor defendants—the Archdiocese of Milwaukee, John Broczek, Candace Warlin, the Diocese of Madison, the Diocese of Green Bay, the Diocese of LaCrosse, and the Diocese of Superior.

## I. LIABILITY FOR ATTORNEY'S FEES

### A. *County Defendants*

 Under 42 U.S.C. § 1988, a "prevailing party" in an action to enforce 42 U.S.C. § 1983 may be allowed a reasonable attorney's fees as part of the costs. While an award of attorney's fees under § 1988 is discretionary with the Court, a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances render such an award unjust. *Murphy v. Kolovitz,* 635 F.2d 662, 663 (7th Cir.1981) (quoting S.Rep. No. 1011, 94th Cong., 2d Sess. 4 *reprinted in* [1976] U.S.Code Cong. & Ad. News 5908, 5912).

 The county defendants argue that the plaintiffs did not prevail under § 1983, but rather that they prevailed in a direct action to vindicate First Amendment rights in accordance with *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The defendants claim that this must be so because the regulation held invalid was a federal regulation, and § 1983 applies only to actions taken under state law.

The defendants' position is untenable for a variety of reasons. First, the decision of the Seventh Circuit on appeal referred to this action as one under § 1983. While the issue was not discussed in the decision (nor was it ever raised), this action was never referred to as a *Bivens* type of action. The defendants are foreclosed from raising this issue now. Second, the county defendants were acting under color of state law. Although the CETA program is a federal program and uses federal funds, federal law does not require state or local governments to participate in the program. County Executive O'Donnell could participate in the program only upon being authorized to do so by the Milwaukee County Board resolution passed on March 2, 1976. Third, the federal regulations that were held unconstitutional did not require the prime sponsors to place CETA recipients in sectarian schools but only limited the type of positions that CETA recipients could hold in

sectarian schools. The counties had discretion not to place CETA recipients in sectarian related positions. The county defendants' authority to exercise that discretion is derived from state law. Thus, this action may not be construed as having been a *Bivens* type action.

■ In a related argument, the county defendants argue that in their capacity as prime sponsors for the CETA program, they were acting as federal agents and that therefore the federal government's immunity against attorney's fees awards under 28 U.S.C. § 2412 applies to them. With certain exceptions, § 2412 prohibits an award of attorney's fees against "the United States or any agency or official of the United States." Attorney's fees under § 1988 is not an exception to the prohibition under § 2412. *NAACP v. Civiletti,* 609 F.2d 514 (D.C.Cir.1979), *cert. denied,* 447 U.S. 922, 100 S.Ct. 3012, 65 L.Ed.2d 1114 (1980); *Shannon v. United States Department of Housing and Urban Development,* 577 F.2d 854 (3rd Cir.), *cert. denied* 439 U.S. 1002, 99 S.Ct. 611, 58 L.Ed.2d 677 (1978).

■ However, the county defendants fail to cite any case which holds that § 2412 precludes an award of attorney's fees against a state or local agency that cooperates in a federally created program. The only case cited that comes close to such a holding is *National Association of Regional Medical Programs v. Mathews,* 551 F.2d 340 (D.C.Cir.1976), *cert. denied,* 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977). In that case the district court had devised a "convoluted formula" for payment of the fees which made it appear as if the regional medical programs were the source of the funds when in fact the federal government was ultimately being charged. 551 F.2d at 342–43. It was on that basis that the Court held that § 2412 prohibited the award of attorney's fees.

The case relied upon by the plaintiff is much closer to the facts of this case. In *Staten v. Housing Authority of Pittsburgh,* 638 F.2d 599 (3rd Cir.1980), the Housing Authority also claimed to be immune from attorney's fees as an agent of the federal

government. The authority was a public corporation created under state law to carry out a variety of purposes. The Authority had extensive ties with the federal government and received annual grants if it complied with federal requirements. The Third Circuit held that the source of the Authority's funding was not determinative, and that the Authority's exclusive control over the federal funds, its freedom from federal control over the daily management of the Authority, and the creation and governance of the Authority by state law had to be considered. 638 F.2d at 604.

As noted above, the counties and county executive are creatures of state law. The Milwaukee County Executive was authorized to become a prime sponsor for the CETA program by resolution of the Milwaukee County Board. The affidavit of Lawrence J. Jankowski in support of defendant O'Donnell's opposition to plaintiffs' motion for attorney's fees and costs (¶ 6) indicates that the federal representative of the Department of Labor visits Milwaukee County about once a month to assure compliance with regulations. Although the County Executive must comply with federal regulations and policy, the day-to-day management of the CETA program is largely left to the county. Finally, although the Milwaukee County Executive Office for Economic Resource Development may have no function other than to administer CETA, the defendant in this case, the County Executive, has a variety of functions under state law. Thus, this Court holds that the county defendants are not federal agents immune from attorney's fees awards.

Regardless of whether the counties were acting as federal agents, this Court concludes *infra* that the position of the defendants was not substantially justified. Therefore, this case falls into § 2412(d)'s exception to the general rule against attorney's fees.

■ The county defendants further argue that a special circumstance in this case makes an award of attorney's fees unfair. The special circumstance is that the coun-

ties were simply carrying out a federal program within regulatory requirements in good faith. Since the regulation held unconstitutional was a federal regulation which the counties could not change, and since the injunction issued was national in scope, the counties claim that assessing attorney's fees against them would be unfair.

This Court cannot hold that the counties' participation in a federal program constitutes a special circumstance that would make the award of attorney's fees unfair. The Court finds *Bush v. Bays,* 463 F.Supp. 59 (E.D.Va.1978), unpersuasive. Unlike the defendants in *Bush* who were bound by the food stamp eligibility requirements set by the federal government, the county defendants were not required to place their CETA participants in sectarian related positions. This Court can find no reason to exclude the county defendants from liability for attorney's fees under § 1988.

Finally, defendant Waukesha County, although joining the position taken by Milwaukee County in its brief opposing an award of attorney's fees, argues that an award of attorney's fees against Waukesha County would be unfair since Waukesha County was an inactive party to this suit. Waukesha County accurately claims that this was the general understanding of its role in this suit. The Court agrees that Waukesha County, although technically a party throughout this suit, was involved in this suit in name only. Because Waukesha County's participation in this suit is negligible, it would be unfair to charge it with plaintiffs' attorney's fees.

### B. *Federal Defendant*

As discussed above, 28 U.S.C. § 2412 generally prohibits awards of attorney's fees against the United States. The Equal Access to Justice Act of 1980, Pub.L. No. 96–481, Title II, 94 Stat. 2325, amended § 2412 by adding certain exceptions to the general prohibition of attorney's fees awards against the United States. Plaintiffs filed a supplemental motion for award of attorney's fees under two of these exceptions.

■ Plaintiffs claim that this case falls within the common benefit exception to the American rule under the common law, and that therefore they are entitled to attorney's fees under § 2412(b). In this action, however, there is no common fund that the plaintiffs have sought to create or preserve, and the common benefit that the plaintiffs have created is one that has accrued to all taxpayers and citizens. The Supreme Court has made clear that where litigants simply vindicate a general social grievance, the common benefit exception to the American rule prohibiting awards of attorney's fees does not apply. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 479, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980). Therefore, the plaintiffs are not entitled to attorney's fees against the federal defendant under § 2412(b).

Plaintiffs also claim that they are entitled to attorney's fees under § 2412(d) because the position of the federal defendants was not substantially justified. To show that the federal defendants' position was not substantially justified, the plaintiffs point out that the Department of Labor defended this action despite a memorandum from the Department of Justice concluding that some of the disputed CETA funding was possibly unconstitutional under Supreme Court precedent. Plaintiffs also point to an excerpt from former Attorney General Griffin Bell's recent book entitled *Taking Care of the Law.* Those excerpts indicate that the decision to defend this suit was largely political and that Bell informed the President that whether he could defend this suit would depend on his judgment "whether ethically there is enough of an argument in favor of the regulations to allow [him] to assert their validity in court." G. Bell, *Taking Care of the Law* 27 (1982).

■ Whatever disagreement over the merits of the Government's position existed between the Department of Justice on the one hand and the White House and the Department of Labor on the other hand is irrelevant to determining whether the federal defendant's position was substantially

justified. "The test of whether or not a Government action is substantially justified is essentially one of reasonableness. Where the Government can show that its case had a reasonable basis both in law and fact, no award will be made." H.R.Rep. 1418, 96th Cong., 2d Sess. 10, *reprinted in* 1980 U.S. Code Cong. Ad.News 4953, 4984, 4989. Under this test, however, the Court concludes that the defendants had no reasonable basis in law for their position. In view of the then existing Supreme Court precedent, the use of CETA funds for sectarian positions of employment constitute a clear violation of the Establishment Clause. For this reason, the federal defendant is not immune from attorney's fees under § 2412.

 Nonetheless, the federal defendant argues that only attorney's fees for time spent on this case after the effective date of the Equal Access to Justice Act (EAJA), October 1, 1981, can be awarded under § 2412(d). The federal defendant argues that § 2412(a) embodies the doctrine of sovereign immunity. Since waivers of sovereign immunity must be unequivocally expressed, the federal defendant argues that attorney's fees accrued prior to October 1, 1981, cannot be awarded since the immunity existed until then. The plaintiffs rely on § 208 of the EAJA which makes the EAJA applicable to any civil action "which is pending on, or commenced on or after" October 1, 1981.

To support its argument that only post-October 1, 1981, fees may be awarded, the federal defendant analogizes to the Contract Disputes Act of 1978, Pub.L. No. 95–563, 92 Stat. 2383, 41 U.S.C. 601 *et seq.* (Disputes Act). That act provided that contractors could elect to proceed under the Disputes Act with respect to any claim "pending then [at the effective date of the Disputes Act] before the contracting officer or initiated thereafter." Section 12 of the Disputes Act provided for interest on amounts found due contractors "from the date the contracting officer receives the claim." In *Brookfield Construction Co. v. United States,* 661 F.2d 159 (Ct.Cl.1981), the Court of Claims construed these provisions

in light of the doctrine of sovereign immunity to prohibit any award for interest accrued before the effective date of the Disputes Act.

The plaintiffs instead analogize to § 1988 which was enacted as the Civil Rights Attorney's Fees Awards Act of 1976 (Fees Act). The legislative history of that act indicated that it was to apply to cases pending on its effective date. In *Bond v. Stanton,* 630 F.2d 1231 (7th Cir.1980), the Seventh Circuit held that § 1988 entitled a prevailing plaintiff to attorney's fees for work done on an appeal prior to the effective date of the Fees Act.

The language of § 208 of the EAJA and the legislative history fail to resolve this issue. While each indicate that the EAJA was to apply to cases pending on October 1, 1981, they fail to specify whether the effective date of the Act is to be taken into account in determining the amount of attorney's fees to be awarded. Nonetheless, § 2412(d) clearly constitutes a waiver of sovereign immunity from attorney's fees awards where the federal government's position was not substantially justified. Without any other provision specifying the amount of attorney's fees to be awarded, the most natural interpretation of § 2412(d) is that attorney's fees are to be calculated in the same manner as in other cases. For this reason, and because § 2412(d) is a remedial provision more analogous to § 1988 than to § 12 of the Contract Disputes Act of 1978, this Court holds that attorney's fees may be awarded under § 2412 for time spent on this action prior to October 1, 1981.

## C. Intervenor Defendants

The intervenor defendants claim that they are not liable for attorney's fees under § 1988 for two reasons. First, they claim that the plaintiffs did not prevail against the intervenor defendants because the order issued in this case was not directed at them, and that in any event awards against intervenors are not appropriate. Second, they claim that special circumstances exist which preclude an award of attorney's fees

against them. The Court rejects both of these arguments.

■ The short answer to the intervenor defendants' contention that the plaintiffs have not prevailed against them is that the order of this Court, affirmed by the Seventh Circuit, was directed at them. It applied to "the defendants the United States Department of Labor, Ray Marshall, William F. O'Donnell, Pam Anderson, George A. Moore; . . . and *all persons acting in concert* and in participation with them in the administration of grants and awards under Title II of the Comprehensive Employment and Training Act of 1973." 473 F.Supp. at 779 (emphasis added). The intervening dioceses were allowed to intervene because they received CETA funds and employed workers through the CETA program. The individual intervenors were allowed to intervene because success by the plaintiffs could have resulted in the termination of their employment in CETA funded positions. Additionally, at the time the motion to intervene was granted, the plaintiffs were seeking to have CETA funds previously received reimbursed to the federal government. While the plaintiffs did not prevail on the reimbursement claim, which was later dropped, the plaintiffs did succeed in enjoining further expenditures. As the Seventh Circuit has stated, all that is required is that the plaintiffs have " 'prevailed in a practical sense.' " *Murphy v. Kolovitz,* 635 F.2d 662, 663 (7th Cir.1981) (quoting *Dawson v. Pastrick,* 600 F.2d 70 (7th Cir.1979)). In this case, the plaintiffs have prevailed in a practical sense against the intervenor defendants.

Under *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), private individuals who join with government officials to violate civil rights may be held liable under § 1983. Once such liability is established, a plaintiff has prevailed against the individuals under § 1983, and, therefore, an award of attorney's fees against those individuals under § 1988 is appropriate. The intervenor defendants' attempt to distinguish the liability stage from the attorney's fees award stage of the litigation is unpersuasive.

Similarly, no special importance can attach to the intervenor defendants' status as intervenors. Once leave to intervene is granted, an intervening defendant stands on the same footing as any other defendant. The intervenor defendants have failed to cite any case indicating that their status as intervening defendants, rather than defendants named in the complaint, justified special treatment for them.

■ The intervenor defendants raise three special circumstances that they claim make an award of attorney's fees inappropriate. First, they point out that they raised defenses based on civil rights, namely, the Free Exercise Clause, and since § 1988 was designed to encourage the enforcement of civil rights, they argue that it would not suit the purposes of that statute to award attorney's fees against them. However, this Court cannot agree that whenever a defendant raises an unmeritorious civil rights defense an award of attorney's fees for violating another's civil rights is precluded under § 1988. The second alleged special circumstance—that the primary defendants are immune from an award of attorney's fees—does not exist in this case since the Court has found the county defendants and the federal defendant liable. The third alleged special circumstance—that they were just conduits through which the Government carried out its presumably valid regulations—also does not preclude an award of attorney's fees. The intervenors voluntarily participated in that program and voluntarily participated in opposing the plaintiffs in this suit. Their participation in this suit added to the difficulties the plaintiffs faced in prosecuting this action.

The plaintiffs have prevailed against the intervenor defendants, and the intervenor defendants have not shown that special circumstances preclude an award of attorney's fees against them.

## II. AMOUNT OF AND ALLOCATION OF THE LIABILITY FOR THE ATTORNEY'S FEES

In its order dated September 14, 1981, this Court set a briefing schedule for plaintiffs' request for an award of attorney's fees. Nonetheless, the intervenor defendants in footnote 1 of their memorandum in opposition to the plaintiffs' motion for attorney's fees and the federal defendant in footnote 2 of its opposition to plaintiffs' supplemental attorney's fees petition ask for an opportunity to address the reasonableness of the fee request if the Court determines that they are liable. The Court will deny those requests. The order of September 14, 1981, did not envision a severing of the issue of liability from the issue of reasonableness. The plaintiffs, the county defendants, and the federal defendant in its initial brief opposing plaintiffs' request for attorney's fees and costs discussed the reasonableness of the amount of attorney's fees or costs requested. Even the intervening defendants in their footnote 1 comment on the reasonableness of the requests. The intervening defendants and the federal defendant have had their opportunity to address the reasonableness of the fee requests.

■ The plaintiffs are entitled to recover attorney's fees only for time spent on preparation and presentation of the claims on which the plaintiffs prevailed. *Busche v. Burkee,* 649 F.2d 509, 522 (7th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). However, time spent on unsuccessful claims may be included in the attorney's fees award to the extent that such time would have been spent in connection with the successful claims even if the unsuccessful claims had not been brought. 649 F.2d at 521. Because the plaintiffs dismissed their claim for reimbursement, they did not claim attorney's fees for time spent on that claim. (Plaintiffs' memorandum of law in support of motion for award of attorney's fees and costs for prevailing in litigation and on appeal, § 3.) However, the affidavit of Raymond Dall'Osto did include two entries for time spent relative to

the dismissal of the reimbursement claim. This time will be disallowed.

Defendant O'Donnell claims that the plaintiffs also are not entitled to attorney's fees for time spent on their motion for attorney's fees made to the court of appeals. The court of appeals had remanded the question of attorney's fees together with its remand on the case. 661 F.2d at 618. Nonetheless, the plaintiffs moved the court of appeals for an award of attorney's fees for their appellate work. This motion was denied without prejudice so that this Court could first consider the matter.

■ An award of attorney's fees under § 1988 should include an award for time spent establishing their entitlement to fees. *Bond v. Stanton,* 630 F.2d 1231, 1236 (7th Cir.1980). The plaintiffs made the motion for appellate attorney's fees to the court of appeals because of a First Circuit decision indicating that such a request had to be filed within ten days of judgment and because the clerk's office could not say whether the court of appeals' remand of the issue of attorney's fees included attorney's fees for appellate work. *See* affidavit of Raymond Dall'Osto in support of the motion for award of costs and attorney's fees, Appendix 4. This course was not unreasonable, and by this decision, the plaintiffs are ultimately prevailing on their claim for an award of attorney's fees for their appellate work. Therefore, the time the plaintiffs spent on their unsuccessful motion for attorney's fees before the court of appeals will be considered in determining the amount of attorney's fees to be awarded.

The largest dispute between the parties is over apportioning the award of attorney's fees. The plaintiffs seek to have the liability of the defendants made joint and several. However, in *Crosby v. Bowling,* 683 F.2d 1068, 1075 (7th Cir.1982), the Seventh Circuit indicated that apportionment of an attorney's fee award is appropriate in certain cases. Because a number of defendants settled with the plaintiffs early in the case, and because the roles of the remaining defendants were not equal, this Court be-

lieves that apportionment would be appropriate in this case.

The complaint filed in this action on October 3, 1978, named eleven defendants—the United States Department of Labor, the Governor of Wisconsin, and nine prime sponsors under the CETA program. On January 31, 1979, this Court approved a settlement between the Governor of Wisconsin and the plaintiffs and issued a consent order. On July 31, 1979, this Court similarly approved settlements between the plaintiffs and five of the prime sponsors. On August 28, 1979, this Court dismissed the complaint as to George Moore for lack of service of process.

The plaintiffs have not requested that attorney's fees be awarded against any of the defendants with whom they have settled. Yet some of the time plaintiffs' attorneys spent on the earlier phases of this litigation involved efforts against those defendants. In fact, the itemized statements of time spent on this litigation filed by the plaintiffs include time spent on working out settlements with those defendants who settled. The time spent on these settlements is not appropriately chargeable to the remaining defendants (though time spent responding to the motion to vacate the settlement is chargeable). Additionally, 15 per cent of the hours plaintiffs spent on this case prior to July 31, 1979, will be excluded from the award as solely attributable to those defendants who settled.

■ The remaining time must be allocated among the remaining defendants. Prior to the intervention of the intervenor defendants, it appeared likely that this entire matter would be settled. In fact, when they petitioned to intervene, the intervenor defendants moved this Court to vacate the January 31, 1979, settlement with the Governor of Wisconsin. The intervenor defendant dioceses' participation in this action greatly increased the amount of time that the plaintiffs' attorneys would have to spend on this action. However, like Waukesha County, the individual intervenor defendants participated in this suit in name only, so it would be unfair to award attorney's fees against them. This Court believes that the five intervenor defendant dioceses should be liable for 50 per cent of the attorney's fees awarded, while the federal defendant and Milwaukee County should be liable for 25 per cent each.

There remains the question of what amount of attorney's fees would be reasonable to award to the plaintiffs. The Seventh Circuit, following *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), has enumerated twelve factors bearing on the amount of attorney's fees to be awarded. *See Entertainment Concepts, Inc. III v. Maciejewski,* 631 F.2d 497, 508 (7th Cir.1980), *cert. denied,* 450 U.S. 919, 101 S.Ct. 1366, 67 L.Ed.2d 346 (1981). These factors will be examined seriatim.

### A. The Time and Labor Required

The starting point for this analysis is the amount of time the plaintiffs' attorneys spent on this action. Using the information provided in their affidavits, with appropriate adjustments regarding the settled claims and work regarding the reimbursement claim, the Court finds that the plaintiffs' attorneys devoted the following amounts of time to this case:

Raymond Dall'Osto

1. District Court

| | | |
|---|---:|---:|
| Hours prior to July 31, 1979 | 69.15 | |
| Less work on settlements | .3 | |
| | 68.85 | |
| Less 15% | 10.33 | |
| Hours prior to July 31, 1979, awarded | | 58.52 |
| Hours subsequent to July 31, 1979 | 84.8 | |
| Less work on June 26 & 29, 1981, related to reimbursement claim | .5 | |
| Hours subsequent to July 31, 1979, awarded | | 84.3 |
| TOTAL District Court hours | | 142.82 |

Raymond Dall'Osto—Continued

2. Court of Appeals

3. Supreme Court 2.85

4. Attorney's Fees Application 57.85

5. Hours on Attorney's Fees
 Application-Supplements
 Affidavit of January 7, 1982 21.05
 Affidavit of June 23, 1982 10.0
 TOTAL hours awarded 268.87

Mary Jo Schiavoni

| | | | |
|---|---|---|---|
| Hours prior to July 31, 1979 | 124.25* | | |
| Less work on settlements | 13.5 | | |
| | 110.75 | | |
| Less 15% | 16.61 | | |
| Hours prior to July 31, 1979, awarded | | 94.14 | |
| Hours subsequent to July 31, 1979 | 299.25* | | |
| Less August 10, 1979, time re: settlement | .4 | | |
| Less August 29, 1979, time re: dismissal of Moore | .2 | | |
| Hours subsequent to July 31, 1979, awarded | | 298.65 | |
| TOTAL hours awarded | | | 392.79 |

Michael A. Campbell

| | | | | |
|---|---|---|---|---|
| 1. District Court | | | | |
| Hours prior to July 31, 1979 | | 89.1** | | |
| Less time re: settlements | | | | |
| Nov. 1–30, 1978 | 6 | | | |
| Jan. 5–24, 1979 | 4.5 | | | |
| Feb. 2–24, 1979 | 2 | 12.5 | | |
| | | 76.6 | | |
| Less 15% | | 11.49 | | |
| Hours prior to July 31, 1979, awarded | | | 65.11 | |
| Hours subsequent to July 31, 1979 | | | 55.2** | |
| TOTAL District Court hours | | | | 120.31 |
| 2. Hours spent on appeals | | | | 33.5 |
| TOTAL hours awarded | | | | 153.81 |

\* These total only 423.5 hours, not the
 424.2 written as the total in the
 affidavit of Mary Jo Schiavoni.

\*\* These total 144.3 hours, not the 139.8 hours
 indicated in the affidavit of Michael A. Campbell.

---

The affidavits submitted by the plaintiffs' attorneys evidence a certain amount of duplicative effort and time spent coordinating various ACLU efforts related to the challenged CETA regulations, including efforts to counter United States Senate oppo-

sition to this action. The affidavits also include time for some things that did not require an attorney, e.g., hand delivering briefs. Furthermore, the Court is not convinced that three attorneys were required on certain aspects of this litigation. Nonetheless, the additional time resulting from these deficiencies is minor when viewed in light of the following factors.

### B. *The Novelty and Difficulty of the Questions*

The questions presented in this action were not particularly novel. As the Court has previously noted, the position taken by the defendants was frivolous in view of the then existing Supreme Court precedent. Nonetheless, because of the number of issues and parties in the case, the litigation did become complex.

### C. *The Skill Required to Perform the Legal Services*

All of the plaintiffs' attorneys are experienced civil rights' attorneys whose work product demonstrated a great deal of competence.

### D. *Preclusion of Other Employment*

The Court has no indication that the plaintiffs' attorneys' efforts in this case precluded other employment.

### E. *The Customary Fee in the Community*

The plaintiffs have based their request for attorney's fees on a $65 per hour rate and then ask the Court to apply a multiplier to that rate. Given the background and experience of the plaintiffs' attorneys, the Court concludes that the $65 per hour rate is slightly below the customary fee paid in this community.

### F. *Whether the Fee is Fixed or Contingent*

The ACLU has not accepted any fixed or contingent fees from the plaintiffs in this case.

### G. *Time Limitations Imposed by the Client or the Circumstances*

The plaintiffs sought and obtained a preliminary injunction in this case. Particularly in view of the number of defendants and the addition of the intervening defendants, the time spent by the plaintiffs' attorneys in attempting to expeditiously obtain a preliminary injunction is entitled to some premium.

### H. *The Amount Involved and the Results Obtained*

The judgment obtained by the plaintiffs did not award money but did result in a nationwide injunction of the use of CETA funds for sectarian employment positions. This resulted in an important change in the law and vindicated the rights of all taxpayers not to have their taxes used for religious purposes. The importance of this result obtained by the plaintiffs entitles them to a premium on their attorney's fees.

### I. *The Experience, Reputation, and Ability of the Attorneys*

As noted above, the plaintiffs' attorneys are experienced civil rights' attorneys who handled this litigation in a very competent manner.

### J. *The Undesirability of the Case*

Because this litigation had the result of depriving various religious institutions of funds, and because these religious institutions are prominent in Wisconsin, representing the plaintiffs was not a desirable task.

### K. *The Nature and Length of the Professional Relationship with the Client*

The plaintiffs in this action were involved in this action in name only. The action was brought primarily at the instigation of the plaintiffs' attorneys to eliminate what they saw as an improper entanglement between the church and state.

### L. *Awards in Similar Cases*

The plaintiffs' attorneys have indicated by affidavit that in comparable cases, fees

have been calculated based on awards of between $45 and $100 per hour. This observation has not been challenged by the defendants.

The Court concludes that a rate of $65 per hour is reasonable and that this figure should be multiplied by 1.25 to take into account the foregoing factors. The total hours awarded are 820.47, which at $65 per hour totals $53,330.55. Multiplying this figure by 1.25 gives a total award of $66,663.19.

## III. COSTS

Finally, this Court must determine the amount of costs to be awarded to the plaintiffs. All the defendants remaining in this action shall be jointly and severally liable for costs to the plaintiffs. However, the plaintiffs' bill of costs includes many items not taxable as costs. Items taxable as costs are listed in Local Rule 9.02 and in 28 U.S.C. § 1920. Accordingly, the plaintiffs will be allowed as costs only those costs shown in Attachment A to the federal defendant's opposition to plaintiffs' petition for attorney's fees and costs filed on December 21, 1981.

The costs listed in the amounts of $504.06 and $35 and identified as receipts 1980 for preparation, printing, and mailing to the Seventh Circuit of drafts and original of appellees' brief and attachments and for expenses for typing, xeroxing, and mailing attorney's fees applications will not be allowed. Only a portion of those costs may be taxed, and the plaintiffs' failure to itemize those costs prevents any award for them.

The plaintiffs will be awarded $442.42 in costs for this action.

### ORDER

1. The plaintiffs are awarded attorney's fees in the amount of $66,663.19 as follows: plaintiffs shall recover from defendants the Archdiocese of Milwaukee, the Diocese of Madison, the Diocese of Green Bay, the Diocese of LaCrosse, and the Diocese of Superior, jointly and severally, the sum of $33,331.59; plaintiffs shall recover from the defendant United States Department of Labor the sum of $16,665.80; and plaintiffs shall recover from the defendant Milwaukee County Executive William O'Donnell the sum of $16,665.80.

2. The clerk for the United States District Court for the Eastern District of Wisconsin shall tax the plaintiffs' costs in the amount of $442.42, jointly and severally, against the defendants Milwaukee County Executive William O'Donnell, Leonard Cors (Waukesha County), the United States Department of Labor, the Archdiocese of Milwaukee, John Broczek, Candace Warlin, the Diocese of Madison, the Diocese of Green Bay, the Diocese of LaCrosse, and the Diocese of Superior.